TOMASIK, Respondent, vs. LANFERMAN, Appellant.

*October 16—November 10, 1931.*

For the appellant there was a brief by *Sanders & McCormick,* attorneys, and *E. J. Herte* of counsel, all of Milwaukee, and oral argument by *A. J. Sanders.*

For the respondent there was a brief by *Gold & McCann* of Milwaukee, and oral argument by *Ray T. McCann.*

OWEN, J. On the 29th day of June, 1929, the plaintiff was an employee of the Gridley Dairy Company, in the city of Milwaukee. About 1:30 a. m. of that day he was delivering milk to the patrons of the company on the Blue Mound highway in said city. His milk wagon was proceeding east on the south side of the highway and in close proximity to the curb. A tourist going west on the Blue Mound highway brought his car to a stop on the north side thereof and crossed the street to the milk wagon to make inquiries of the plaintiff. He engaged in conversation with the plaintiff. While so engaged, the tourist at least was standing on the pavement on the left-hand side of the wagon. The plaintiff was standing either in the door of the wagon, or upon the wagon, or upon the pavement on the left-hand side of the wagon in close proximity thereto. While thus engaged in conversation the defendant approached with his automobile from the west, on the south side of the Blue Mound highway, crashed into the milk wagon and knocked the plaintiff to the pavement, causing serious physical injuries.

This action was brought by the plaintiff to recover damages. The complaint alleged two causes of action, one based upon gross negligence and one upon ordinary negligence. The court submitted both degrees of negligence to the jury, instructing them that if they found the defendant guilty of gross negligence they need not answer the questions relating

to ordinary negligence. The court did not submit the question of plaintiff's contributory negligence to the jury. The jury found the defendant guilty of gross negligence and assessed damages in the sum of $24,250. Upon motion after verdict the court granted a new trial unless within twenty days plaintiff should consent in writing to a reduction of the jury's assessment of damages to the sum of $15,000, which the court stated to be the lowest amount at which a jury, properly instructed, would probably assess the damages. The plaintiff filed such consent in writing, and judgment was entered for $15,000.

It is contended that there is no evidence in the case to sustain the finding of gross negligence. The evidence relied upon by the plaintiff to establish gross negligence justifies the conclusion that the defendant was driving his automobile while in an intoxicated condition. There was practically no traffic on the highway at the time of the accident. The road was forty feet in width. The milk wagon was well supplied with lights. There were two lights on the inside of the wagon which could be seen through an open door in the rear. There were two lights on the outside and one under the wagon. The evidence justifies the conclusion that the defendant was driving at a high rate of speed and did not see these lights. The defendant admits that he did not see either the wagon or the lights until he was within six or eight feet of it.

The evidence further discloses that the defendant had been attending a party at the "Golden Pheasant," a road-house on the Blue Mound road, which party commenced about 9:30 of that night. Gin was drunk at the party, although defendant claims he drank none of it. The evidence justifies the conclusion that there was a bottle containing gin in his car at the time of the accident. A number of witnesses testified that the defendant was under the influence of liquor immediately after the accident. Two witnesses testified that when they arrived upon the scene and asked what was the

cause of the accident, he (the defendant) replied, "who the hell cares." The evidence was sufficient to warrant the jury in concluding that the defendant was driving the car while he was intoxicated, and, if so, the finding of gross negligence should not be disturbed. We hold that the driving of a car upon our highways by one intoxicated fully responds to all of the elements necessary to constitute gross negligence. One intoxicated is without proper control of all those faculties the exercise of which is necessary to avoid danger to others while driving a car upon a public highway. The driving of a car by one in such condition betrays an absence of any care, and indicates such recklessness and wantonness as evinces an utter disregard of consequences. We would not have it inferred that one is always to be deemed intoxicated when the smell of liquor is upon his breath. The actual degree of intoxication will always be a material consideration, but the coincidence of a breath tainted with liquor on the part of one responsible for a most distressing accident under the circumstances here existing, and whose natural instincts prompt the discourteous retort above quoted, has its implications. It justifies inferences, and, while reasonable men may draw different inferences from the situation, the inference drawn by the jury from the circumstances here presented was entirely reasonable and permissible. If one who has indulged in a social glass assumes to drive his car, it behooves him to do so in an extra-cautious manner if he would avoid the consequences resulting from such inferences. We are not disposed to disturb the verdict of the jury that the defendant was guilty of gross negligence.

This makes it unnecessary for us to consider whether the question of plaintiff's contributory negligence should have been submitted to the jury, and leaves only the question of whether the judgment is excessive, or whether the amount assessed by the jury indicates bias or prejudice on the part of the jury.

A consideration of plaintiff's injuries leaves us with no impression that the judgment is excessive. The plaintiff suffered a severe concussion of the brain. There were multiple hemorrhages in the brain tissues resulting in the escape of cerebro-spinal fluid and blood. As a result of the injury to the brain, plaintiff's memory has been seriously affected. He suffers headaches two or three times a week and he has dizzy spells. He sustained a fracture of the right jaw which extended up in the joint just below the ear. The ligaments of the jaw joint were divided, causing considerable scar tissue which does not permit the plaintiff to open his mouth in a normal manner. This joint will have to be removed. When this is done the jaw will function only on one joint. At the time of the trial the plaintiff could open his mouth only one-half of its normal extent. His jaws did not function easily. He had to exercise his jaws in the morning before he could open his mouth wide enough to admit his false teeth. Owing to the fact that he has lost the use of one joint of the jaw bone he cannot properly masticate his food. All of his upper teeth were knocked out or had to be removed, making a full upper plate necessary. A lower plate containing four teeth on one side and three on the other was also rendered necessary by the accident. The impairment of function in the plaintiff's jaw is permanent. He sustained a compound comminuted fracture of the right leg. After the first attempt to set the leg three successive operations were necessary. The leg is practically an inch shorter than it was before the accident, and there is some posterior bowing, which condition is permanent. It is estimated that there is twenty-five to thirty per cent. permanent disability in the leg.

At the time of the accident the plaintiff was earning $145 per month. He was unable to work for approximately eighteen months, after which he was given employment by his former employer at the rate of $115 per month. At the

time of the trial his loss in wages had been $2,646. He was thirty-three years of age and his expectancy of life was about thirty-three years. His loss of earning capacity is permanent. He had expended for medical, nursing, and hospital services at the time of trial $1,631.50. His actual monetary loss, therefore, was in excess of $4,000.

We have then an actual monetary loss of $4,000, a twenty-five per cent. disability of the leg, loss of memory, headaches and dizzy spells, a permanent loss of earning capacity, the loss of his teeth, loss of the permanent function of his jaw bone which seriously interferes with the proper mastication of his food, and a protracted period of acute pain and suffering. The injury to the jaw bone was a most unusual one and its consequences must be serious. His inability to properly masticate his food must be attended with injurious consequences to his health. We think that under all these circumstances $15,000 is the least amount which any impartial jury, properly instructed, would award the plaintiff.

The only further question is whether the fact that the jury awarded $24,250 indicates passion and prejudice which taints the verdict. The only thing that can be said about the verdict is that the damages awarded are high. This, however, is frequently the case. From time to time trial courts and this court have occasion to reduce the amount of damages awarded by the jury. This incident is not generally regarded as indicating passion or prejudice on the part of the jury. There were elements of injury in this case of an unusual and shocking nature. When it is realized that the assessment of damages in a case like this rests largely in intuitive appraisal, the amount of the verdict cannot be regarded as indicating prejudice and passion. We discover no error and the judgment must be affirmed.

*By the Court.*—So ordered.