STATE of Wisconsin, Plaintiff-Respondent,

v.

GARY CAIBAIOSAI, Defendant-Appellant.†

Supreme Court

*No. 83–2330–CR. Argued January 3, 1985.—*
*Decided February 27, 1985.*

(Also reported in 363 N.W.2d 574.)

† Motion for reconsideration denied April 30, 1985.

588

For the defendant-appellant there were briefs and oral argument by *Steven P. Weiss*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

STEINMETZ, J. The issues in this case are: (1) whether sec. 940.09 (1) (a), Stats.,[1] proscribing the crime of homicide by an intoxicated operation of a motor vehicle is unconstitutional in that it does not require a causal connection between the intoxicated condition of the operator and the death of another person; (2) whether the affirmative defense provision set out in sec. 940.09 (2) invades his right against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution; and (3) whether the trial court's refusal to instruct the jury on the affirmative defense set out in sec. 940.09 (2) denied the defendant due process and a fair trial.

The defendant, Gary Caibaiosai, was charged with violating sec. 940.09 (1) (a), Stats., by operating a motor vehicle while under the influence of an intoxicant which resulted in the death of Janet M. Tunkieicz. He was tried by a jury, found guilty and on February 24, 1983, was sentenced to serve a term of imprisonment not to exceed three years.

The defendant filed a post-conviction motion for a new trial on the grounds that: sec. 940.09 (1) (a), Stats., is unconstitutional; sec. 940.09 (2) invades his right against self-incrimination; and it was an abuse of discretion to

[1] Sec. 940.09(1)(a), Stats., provides as follows:

"**940.09 Homicide by intoxicated use of vehicle or firearm.** (1) Any person who does either of the following under par. (a) or (b) is guilty of a Class D felony:

"(a) Causes the death of another by the operation or handling of a vehicle, firearm or airgun and while under the influence of an intoxicant or a controlled substance or a combination of an intoxicant and a controlled substance;"

refuse to give an instruction to the jury on the affirmative defense. Alternatively, that motion requested a reduction of his sentence. After a hearing, the trial court denied the motion and defendant filed a notice of appeal. The court of appeals certified the appeal to this court and we granted certification.

On June 6, 1982, at approximately 8:04 p.m., defendant was driving his 1977 Harley-Davidson motorcycle eastbound on Highway 142 in the vicinity of county Highway "MB" with Janet Tunkieicz as his passenger. Ahead of the defendant was David Dickinson operating a motorcycle with his passenger Yvonne Mink in the sidecar. At the trial, Mink testified the defendant and Tunkieicz pulled into the oncoming lane and passed them. She estimated that the defendant was driving somewhere between 60 and 65 miles per hour at the moment that he passed her. Dickinson and Mink also gave confusing and conflicting testimony concerning another motorcycle operated by Doug Hilliary, but it is not clear whether the defendant passed Hilliary or what Hilliary's exact position was at the time of the accident. After the defendant completed the pass and pulled back into the right lane, Mink observed his brake light flash and then his motorcycle go into the gravel along a curve in the road and skid into the three to four foot deep ditch along the side of the road. She did not identify the location of the gravel in reference to the pavement or the shoulder of the highway. Defendant's motorcycle traveled approximately 180 to 200 feet, struck a utility pole and flipped over causing Tunkieicz to strike a tree approximately 80 feet from the utility pole. Janet Tunkieicz was killed instantly. Upon impact the defendant was thrown clear, remained conscious and was not seriously injured.

Evidence was admitted that at approximately 10:09 p.m., a blood sample was taken from the defendant and later tested for alcohol content which registered at 0.13

percent. At 10:39 p.m. defendant was tested on a breathalyzer, and his blood alcohol level was listed as 0.11 percent.

The defense presented one witness, David Dickinson, the operator of the motorcycle on which Mink was a passenger. He testified he was a motorcycle mechanic and had a long history of owning and operating motorcycles. He testified he had lost control of motorcycles on numerous occasions and that a passenger riding on the back of a motorcycle could easily affect the controllability of the motorcycle. He also testified that road conditions could also cause a motorcyclist to lose control.

Dickinson stated he was operating his motorcycle at around the speed limit on Highway 142 when the defendant's motorcycle passed his. He described the accident by saying that it looked like the defendant's motorcycle had gone "towards the gravel" and a cloud of dust was raised. Dickinson testified he saw "a cloud of dust and it looked like the defendant recovered for a second and then the bike went down in the ditch." The defendant presented no other evidence and did not testify in his own behalf.

Section 940.09, Stats., was designed to protect the public from a particular type of risk and harm, namely to hold accountable persons who become intoxicated, operate a motor vehicle and cause the death of another person. In the preface to the latest revisions of the drunk driving laws, the legislature expressly stated that its purpose was to "provide maximum safety for all users of the highway of this state" from the harm threatened by "[o]peration of motor vehicles by persons who are under the influence of an intoxicant." Laws of 1981, ch. 20, secs. 2051(13)(a)1 and 2051(13)(b)1.

From the creation of sec. 940.09, Stats., to 1955 there were only two elements of the offense: causing the death of another person by the operation of a vehicle and being

under the influence of an intoxicant at the time of the accident. *State v. Peckham,* 263 Wis. 239, 242, 56 N.W. 2d 835 (1953). The *Peckham* court held that there was negligence in "the driving of an automobile while under the influence of intoxicating liquor." *Id.* at 243. This statement was based on an earlier declaration of this court in *Tomasik v. Lanferman,* 206 Wis. 94, 238 N.W. 857 (1931) as follows:

"One intoxicated is without proper control of all those faculties the exercise of which is necessary to avoid danger to others while driving a car upon a public highway. The driving of a car by one in such condition betrays an absence of any care, and indicates such recklessness and wantonness as evinces an utter disregard of consequences." *Id.* at 97.

As this court stated in *State v. Resler,* 262 Wis. 285, 290, 55 N.W.2d 35 (1952):

"[T]o require that facts be shown to prove that defendant's operation of the car was so affected by his intoxication that the accident would not have happened if he had been sober, would be to impose an impossible burden upon the state in the prosecution of such a case." *Id.* at 290.

Moreover, "If it can also be shown that the defendant was intoxicated when he so operated his vehicle, it must be assumed that there existed a causal connection between the intoxication and the death." *Id.* at 290, citing *Tomasik.*

In 1955 the legislature revised the statute to provide that a person was guilty of homicide by an intoxicated use of a vehicle if he caused the death of another "by the negligent operation . . . of a vehicle . . . while under the influence of an intoxicant." Sec. 940.09, 1955. The only change in the elements of the offense was the requirement of "proof of causal negligence in addition to [the] operation or handling [of a vehicle] while under

the influence of an intoxicant." There was still no requirement that the defendant's intoxication cause the victim's death. *See Bennett v. State*, 54 Wis. 2d 727, 730, 196 N.W.2d 704 (1972).

Section 940.09 (1) (a), Stats.,[2] in its present form clearly states that a person commits a Class D felony who:

(1) causes the death of another,

(2) by the operation of a vehicle,

(3) while under the influence of an intoxicant.

Under our laws, some acts performed with no particular mental state and even without a particular result, are considered sufficiently antisocial enough to qualify as a crime, *e.g.*, sec. 940.225 (1) (b), Stats., (sexual assault using a dangerous weapon). Other acts must be accompanied by a particular mental state in the performance of an act to make them sufficiently antisocial, *e.g.*, sec. 943.10 (1) (burglary, *i.e.*, entry with intent to steal or commit a felony). In still other instances, acts performed with a particular state of mind must cause a particular result to give them sufficient antisocial significance to justify treating the perpetrator as a criminal, *e.g.*, sec. 940.01 (murder).

The legislature has determined that combining the operation of a motor vehicle with being in an intoxicated state is conduct which is *malum prohibitum* and is pervasively antisocial. Since the conduct is considered inherently evil, it conceptually cannot be divided into portions which are bad and portions which are not bad. Section 346.63, Stats., entitled "Operating under the influence of intoxicants" is violated by a person who, one, operates a motor vehicle, and two, is at the time under the influence of an intoxicant. The commission of the offense does not require any erratic or negligent driving. Because driving under the influence of an in-

---

[2] Laws of 1981, ch. 20, sec. 1817g, effective May 1, 1978, and amended in Laws of 1983, Act 459, sec. 26, effective May 18, 1984.

toxicant is *malum prohibitum* it is impossible to separate the intoxication from the driving or the driving from the intoxication. The result is the potentially lethal and illegal combination of driving while intoxicated.

Section 940.09, Stats., requires that the prosecution prove and the jury find beyond a reasonable doubt a causal connection between the defendant's unlawful conduct, operation of a motor vehicle while intoxicated, and the victim's death. The statute does not include as an element of the crime a direct causal connection between the fact of defendant's intoxication, conceptualized as an isolated act, and the victim's death. Under this statute there is an inherently dangerous activity in which it is reasonably foreseeable that driving while intoxicated may result in the death of an individual. The legislature has determined this activity so inherently dangerous that proof of it need not require causal connection between the defendant's intoxication and the death.

In deciding the constitutionality of the statutorily increased penalty where the acts of contributing to the delinquency of a child resulted in death, we stated in *State ex rel. Schulter v. Roraff,* 39 Wis. 2d 342, 355, 159 N.W.2d 25 (1968):

"What punishment is to be related to a particular crime is within the province of the legislature and the relating process is governed by the constitution to the extent no cruel and inhuman punishment is permitted and due process and equal protection are afforded.

"We think the consequences of the act and their seriousness may be a proper consideration in fixing the severity of the punishment. Foreseeability or intent that the specific consequences occur are not necessary to due process or to a crime. Acts which result in death frequently carry increased penalties over the same act which does not result in death, *i.e.,* sec. 940.03, Stats., felony murder. We think there is sufficient connection even if it is only causation between the proscribed act of contributing to the delinquency of a child and death result-

ing from such delinquency to make an increased penalty reasonable and not arbitrary even though death is unintended or unforeseen."

In discussing strict criminal liability imposed on persons who fail to have a license or comply with regulations when trafficking in drugs or in firearms, we stated in *State v. Collova,* 79 Wis. 2d 473, 484, 255 N.W.2d 581 (1977):

"But such acts are in and of themselves not innocent acts. Persons who choose to engage in these kinds of unusual and dangerous activities may reasonably be held to the highest standards of care and precision, enforced by strict criminal liability, in conforming to government regulations."

So, when a person chooses to operate an automobile while under the influence of intoxicants and has done so deliberately knowing that society has through its legislature established such combined activities as dangerous and when such operation results in death, it may be punished as a felony.

It is negligence per se to operate a motor vehicle while under the influence of intoxicants. Experience has established this conclusion and the legislature has accepted it as a fact in sec. 346.63(1)(a), Stats., and has made such combined activities a class D felony when the operation of the vehicle results in death in sec. 940.09(1)(a). The substantial factor in the cause of the death is the cause in fact of the operation of the vehicle while intoxicated. Section 940.09(1)(a) accepts that the conduct of operating under the influence of intoxicants plus the consequences of death will result in a felony charge. The people of this state through their legislature have determined in sec. 940.09(1)(a) that the operation of a motor vehicle by one who is under the influence of intoxicants is a risk that will not be tolerated.

Section 940.09 (2), Stats.,[3] provides an affirmative defense for a defendant tried for causing the death of another by the operation of a motor vehicle while under the influence of an intoxicant. It is meant to provide a defense for the situation where there is an intervening cause[4] between the intoxicated operation of the automobile and the death of an individual. The defendant argues that this affirmative defense provision to be exercised invades his right against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution.[5] He states that if he is the only possible witness able to present evidence in support of the defense, then he will be forced to testify. This argument has already been considered and denied by the United States Supreme Court in *Williams v. Florida,* 399 U.S. 78, 83–84 (1970) :

---

[3] Sec. 940.09 (2), Stats., provides as follows:

"(2) The actor has a defense if it appears by a preponderance of the evidence that the death would have occurred even if the actor had not been under the influence of an intoxicant or a controlled substance or a combination thereof or did not have a blood alcohol concentration described under sub. (1) (b)."

[4] Black's Law Dictionary (5th ed. 1979) defines "intervening cause" as:

"In criminal law, a cause which comes between an antecedent and a consequence; it may be either independent or dependent, but in either case it is sufficient to negate criminal responsibility."

[5] The Fifth Amendment to the United States Constitution provides:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

"The defendant in a criminal trial is frequently forced to testify himself and to call other witnesses in an effort to reduce the risk of conviction. When he presents his witnesses, he must reveal their identity and submit them to cross-examination which in itself may prove incriminating or which may furnish the State with leads to incriminating rebuttal evidence. That the defendant faces such a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination. The pressures generated by the State's evidence may be severe but they do not vitiate the defendant's choice to present an [affirmative] defense and witnesses to prove it, even though the attempted defense ends in catastrophe for the defendant. However 'testimonial' or 'incriminating' the [affirmative] defense proves to be, it cannot be considered 'compelled' within the meaning of the Fifth and Fourteenth Amendments."

The *Williams* court was speaking of the affirmative defense of alibi. (*See also Barnes v. United States,* 412 U.S. 837, 846–47 (1973) regarding statutory presumptions and inferences requiring the defendant to introduce rebuttal evidence.)

In *United States v. Washington,* 431 U.S. 181, 187 (1977), the Supreme Court held the fifth amendment's privilege against self-incrimination proscribes only self-incrimination obtained by a "genuine compulsion of testimony" it proscribes only officially coerced self-incrimination. The availability or attraction of an affirmative defense does not amount to compulsion in the constitutional sense. In *Yee Hem v. United States,* 268 U.S. 178, 185 (1925), the Court stated:

"The point that the practical effect of the statute creating the presumption is to compel the accused person to be a witness against himself may be put aside with slight discussion. The statute compels nothing. It does no more than to make possession of the prohibited article *prima facie* evidence of guilt. It leaves the accused entirely free to testify or not as he chooses. If the accused

happens to be the only repository of the facts necessary to negative the presumption arising from his possession, that is a misfortune which the statute under review does not create but which is inherent in the case. The same situation might present itself if there were no statutory presumption and a *prima facie* case of concealment with knowledge of unlawful importation were made by the evidence. The necessity of an explanation by the accused would be quite as compelling in that case as in this; but the constraint upon him to give testimony would arise there, as it arises here, simply from the force of circumstances and not from any form of compulsion forbidden by the Constitution."

The legislature in sec. 940.09 (2), Stats., has recognized there may be intervening factors between the fact of operating an automobile under the influence of intoxicants and the death of another and that the defendant should have that defense available to be proven by a preponderance of the evidence. This approach avoids a mechanistic definition of the offense based only on the antisocial act and its consequences which punish even those who might be able to establish some degree of excuse for their conduct. *Patterson v. New York,* 432 U.S. 197, 211–12, n. 13 (1977).

The last issue presented by the defendant concerns the refusal of the trial court to give the affirmative defense instruction under sec. 940.09 (2), Stats., to the jury. The defendant requested the affirmative defense portion of Wis. JI—Criminal, Part I, No. 1185.[6] In denying his

---

[6] Wis. JI—Criminal, Part I, No. 1185, provides in pertinent part:

"If you are satisfied beyond a reasonable doubt from the evidence in this case that the defendant caused the death of (name of victim) by operating a vehicle while under the influence, then you must determine whether the defendant has a defense to this crime by considering the following:

"Would the death of (name of victim) have occurred even if the defendant had not been under the influence?

request, the trial court found there was no evidence shown "that this accident and this death would have occurred had—even though he had not been under the influence." The defendant argues he was entitled to the affirmative defense instruction since his witness, David Dickinson, testified that a passenger on the back of a motorcycle could easily affect the controllability of the vehicle and that road conditions could cause a motorcycle to leave the road and crash. Dickinson testified the defendant had gone "towards the gravel" and a cloud of dust was raised before it appeared the defendant lost control of the motorcycle. This is all speculative evidence incapable of rising to prima facie proof of the intervening cause of the death, much less rising to a greater weight of the credible evidence that the death would have occurred even if the defendant had not been under the influence of an intoxicant. Dickinson did not testify that the defendant's passenger did anything to affect the operation of the motorcycle or that the road conditions present actually affected the defendant's operation. He did not testify the defendant went over

"Wisconsin law provides that it is a defense to the crime charged in this case if it appears by the greater weight of the credible evidence that the death would have occurred even if the defendant had not been under the influence.

"It is not sufficient if the evidence of this defense is of slightly greater weight or convincing power; it must go further and satisfy or convince you before the burden is met.

"If you are satisfied to a reasonable certainty by the greater weight of the credible evidence that the death of (name of victim) would have occurred even if the defendant had not been under the influence, then you must find the defendant not guilty.

"Finally, if you are not satisfied to a reasonable certainty by the greater weight of the credible evidence that the death would have occurred even if the defendant had not been under the influ-. ence, and if you are satisfied beyond a reasonable doubt that the defendant caused the death of (name of victim) by operation of a vehicle while the defendant was under the influence of an intoxicant, then you should find the defendant guilty."

gravel but only went "towards the gravel" and that he saw a cloud of dust. The gravel was not identified by Dickinson as being on the pavement or on the shoulder of the road.

Since the legislature has made the affirmative defense available to defendants charged with a violation of sec. 940.09(1)(a), Stats., trial judges have a duty to so instruct the jury in all cases when any exonerating evidence is received tending to show that the death would have occurred even if the defendant had not been under the influence of intoxicants. However, in this case, there was only speculative evidence offered by defendant's witness as to an intervening cause with no direct evidence which showed any cause of this death other than the operation of the motorcycle by the defendant while he was intoxicated.

The trial and appellate counsels for the defendant argued that the affirmative defense should be available if the death was caused by the defendant's negligence and, therefore, was not caused by his intoxicated operation. In argument before this court, the defendant's position was that all that is required for the affirmative defense to be available is that the accident "would have occurred without the intoxication." This is not a correct application of the affirmative defense. If it were, the defendant could exonerate himself by claiming he was negligent and thereby avoid the consequences of having caused the death while operating a motor vehicle while intoxicated. The defendant's negligence is not an element to be proven in prosecuting this offense and is not an affirmative defense to its commission.

The only evidence offered by Dickinson was the defendant's speed on passing him between 65 to 70 miles per hour and the vague testimony as to gravel in the area where the defendant left the paved portion of the

road. He did not testify that the defendant's passenger affected the defendant's control of the motorcycle or that the road conditions or design caused the defendant to leave the roadway and hit the pole, which impact caused his passenger to hit a tree and be killed. The proof offered for the affirmative defense was speculative and not direct evidence and could not rise to the level required of preponderance. If the instruction as to the affirmative defense had been given to the jury based on the available evidence, it would have allowed the jury to speculate at the very best that the death of Tunkieicz was caused by circumstances other than the defendant's operating the motorcycle while intoxicated.

The legislature has created sec. 940.09(1)(a), Stats., in a continuing effort to keep drivers who are under the influence of intoxicants off the highway. It reflects the public's attitude and belief that such drivers are a sinister hazard per se and if death results from such operation, defendants may be properly found guilty of the class D felony.

*By the Court.*—The order of the circuit court is affirmed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). Driving while under the influence of an intoxicant is deplorable, antisocial, dangerous behavior which the legislature can—and should—penalize severely.

Providing for a maximum five years' imprisonment and a $10,000 fine, sec. 940.09(1)(a), Stats. 1981–82, punishes any person who causes the death of another by the operation or handling of a vehicle while under the influence of an intoxicant.[1]

---

[1] Sec. 940.09(1)(a), Stats. 1981–82, provides as follows:

"Sec. 940.09(1)  Any person who does either of the following under par. (a) or (b) is guilty of a Class D felony:

"(a) Causes the death of another by the operation or handling of a vehicle, firearm or airgun and while under the influence of

While an initial reading of the statute suggests that sec. 940.09(1)(h) is a valid legislative response to the problem of drunk driving, careful consideration of the majority's interpretation of the statute—an interpretation which apparently is in harmony with legislative intent—demonstrates that the statute violates basic concepts of due process and is unconstitutional.

Sec. 940.09 dispenses with the state's burden of proving beyond a reasonable doubt a causal connection between the wrongful conduct (here, the intoxication or faulty operation of a vehicle while under the influence of an intoxicant) and the particular result of the wrongful conduct (here, death). Under sec. 940.09 the state need prove only that the operation of the vehicle caused the death. *See* Wis. J.I.—Cr. Introductory Comment to Instructions 2660–2665, p. 15 (Rel. No. 6, 6/82).[2] Thus sec. 940.09(1)(a) provides that when a person operates

an intoxicant or a controlled substance or a combination of an intoxicant and a controlled substance."

[2] "The [Jury Instruction] Committee was satisfied that the intent of the legislature was to remove any required causal connection between the death and the defendant's negligence or the defendant's being under the influence. Thus, the instruction tries to make the point that only simple *operation* must be causal, not *operation under the influence,* and *not negligent operation.*" Wis. J.I.—Cr. No. 1185, note 9 (Rel. No. 6, 6/82). See also Wis. J.I.—Cr. No. 2660–2665, Introductory Comment, p. 15 (Rel. No. 6, 6/82) (emphasis in original).

· Under the "substantial factor" test of causation, see jury instruction quoted *infra,* there may be more than one substantial causative factor in any given case. See *Hart v. State,* 75 Wis. 2d 371, 397, 249 N.W.2d 810 (1977). For a discussion of cause in fact and legal causation, see LaFave and Scott, *Criminal Law* sec. 35 (1972); Perkins, *Criminal Law,* pp. 685–696 (2d ed. 1969); Model Penal Code, Comments sec. 2.03, pp. 132–135 (Tentative Draft No. 4, 1955), sec. 2.03, p. 28–30 (Proposed Official Draft 1962).

The criminal code does not define "operate." The jury instructions use the definition of "operate" in sec. 346.63(3)(b), Stats. 1981–82.

a vehicle while intoxicated and a death results, the defendant is guilty of a felony, even if there is no causal connection between the intoxication and the death and even if the defendant's actual operation of the vehicle is in no way faulty.

Accordingly, the jury in this case was instructed regarding causation as follows:

"The third element of this offense requires that the relation of cause and effect exists between the death of [the victim] and the defendant's operation of a vehicle. Before such relation of cause and effect can be found to exist, it must appear that the defendant's operation of his vehicle was a substantial factor in producing the death. That is, the defendant's operation must have been a factor which had substantial effect in producing the death as a natural result.
*"It is not required that the death was caused by any drinking of alcohol or by any negligent or improper operation of the vehicle. What is required is that the injury was caused by the defendant's operation of the vehicle."*
Wis. J.I.—Cr. No. 1885.

Because the state need prove only the three statutory elements of the crime beyond a reasonable doubt—(1) the driver was operating a vehicle; (2) the driver was operating the vehicle while under the influence of an intoxicant; and (3) the operation of the vehicle, but not necessarily the driver's faulty operation of the vehicle or the driver's intoxicated condition, "caused" the death— the following drivers can be convicted of homicide under sec. 940.09(1)(a):

1. A driver under the influence of an intoxicant kills a child who darts into the path of the car (Vehicle A) from between parked cars.

2. A driver under the influence of an intoxicant stops the car (Vehicle A) at a red light. His passenger is killed when Car B rear-ends Vehicle A.

3. A driver under the influence of an intoxicant stops the car (Vehicle A) at a red light and proceeds through

the intersection after the light turns green. His passenger is killed when Car B strikes Vehicle A.

4. A driver under the influence of an intoxicant loses control of the motorcycle (Vehicle A) when it skids on an oil slick. The passenger in Vehicle A is killed when she hits a tree.

In these four examples, "but for" the operation of Vehicle A, the victim would not have died. The operation of Vehicle A was a substantial factor causing the victim's death. In short, in each of the four examples sec. 940.09 (1) (a) would allow the state to prosecute and convict the driver of homicide by proving that the death was caused by the mere operation of the vehicle. True, the driver must be operating the vehicle while under the influence of an intoxicant, and operation in that condition is unlawful conduct. The fact is, however, that in each of the four examples set forth above, the driver was (except for driving while under the influence of an intoxicant) obeying the rules of the road, and no driver operating Vehicle A (intoxicated or sober) could have prevented the incident or the death. In each of the four examples, the unlawful conduct as such (operating while under the influence of an intoxicant) did not cause the death. Nevertheless because the state does not have to prove that the unlawful conduct caused the death, a conviction results.

The statute is not rendered constitutional by the provision that allows the driver to escape criminal liability by proving, if he or she can, that the death would have occurred even if the driver had not been intoxicated. In *Patterson v. New York*, 432 U.S. 197 (1977), the United States Supreme Court pointed out that although state legislatures may "reallocate burdens of proof by labeling as affirmative defenses at least some of the elements of the crimes now defined in their statutes . . . there are obviously constitutional limits beyond which the States may not go in this regard. '[I]t is

not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime.' " *Id.* at 210. (Citation omitted.) No United States Supreme Court case since *Patterson* has further defined the constitutional parameters of the legislature's discretion to reallocate the burden of persuasion. See *Moran v. Ohio,* 53 L.W. 3318 (1984) (Brennan and Marshall, JJ. dissenting from denial of *cert.*)

The constitutionality of sec. 940.09(1)(a) should be tested without considering the defense authorized in sec. 940.09(2). Under *Patterson* the test seems to be that it is only if the state may completely delete from the statute the concept of causation between the wrongful conduct (intoxication or faulty operation of a vehicle while under the influence of an intoxicant) and the harm (death), that the burden of persuasion can be shifted to the defendant.[3]

---

[3] *See* Wis. J.I.—Cr. 2660-2665 Introductory Comment, p. 17 (Rel. No. 6, 6/82); Note, *The Constitutionality of Affirmative Defenses after Patterson v. New York,* 78 Colum. L. Rev. 655, 667 (1978).

The majority's conceptualization of the affirmative defense is in itself perplexing. The majority opinion states that the affirmative defense under sec. 940.09(2) is not available to a defendant who shows that the death would have occurred without the intoxication because "if it were, the defendant could exonerate himself by claiming he was negligent and thereby avoid the consequences of having caused the death while operating a motor vehicle while intoxicated." Page 600. I do not understand this statement because sec. 940.09(2) expressly states that "The actor has a defense if it appears by a preponderance of the evidence that the *death would have occurred even if the actor had not been under the influence of an intoxicant* or a controlled substance or a combination thereof or did not have a blood alcohol concentration described under sub. (1)(b)." (Emphasis supplied.) The majority cites no authority and offers no cogent explanation for its denial of the plain words of the statute. The majority fails to explain what type of circumstances would allow the affirmative defense.

In contrast to the majority opinion, the state's brief apparently acknowledges that the affirmative defense is available when the

Requiring the state to prove causation between the wrongful conduct and the harm is a basic principle of criminal jurisprudence.[4] Because sec. 940.09(1)(a) does not require the state to prove this causal connection, the effect of sec. 940.09(2) is that the accused must prove himself or herself innocent. In our system of justice, the state must prove guilt; no statute can require the individual to prove innocence.

In my opinion this statute which punishes a driver for homicide without requiring the state to prove the causal connection between wrongful conduct (that is, the driver's intoxication or the driver's faulty operation of the vehicle while under the influence of an intoxicant) and the harm (death) is unconstitutional. Proof of this causal connection is so critical to culpability for homicide that if a conviction for homicide may be obtained without proof of this causality the statute violates basic notions of what is right and fair. As the four examples illustrate, the driver is blameless of homicide unless there is proof of a causal connection between the wrongful conduct and the harm; without this connection, the culpability necessary to justify a conviction for homicide is missing. From those examples it is clear that causal culpability, not the culpability associate with driving while intoxicated, is required to convict of homicide.

defendant can produce evidence that the accident was caused by negligent operation of the vehicle that would have occurred even if the defendant was not under the influence of an intoxicant. State's brief to the court of appeals, pp. 33–34.

[4] *See* Hall, *General Principles of Criminal Law*, ch. 8 (1947); LaFave & Scott, *Criminal Law* sec. 25, p. 175, 177, sec. 35 (1972); Sayre, *Criminal Responsibility for the Acts of Another*, 43 Harv. L. Rev. 689, 719 (1930).

Requiring the state to prove causation is a corollary of the principle that the state must prove every fact necessary to constitute the crime charged guilt beyond a reasonable doubt before it can imprison an individual. *In re Winship*, 397 U.S. 358 (1970). *See, also,* Underwood, *The Thumb on the Scales of Justice: Burdens of Persuasion in Criminal Cases*, 86 Yale L.J. 1299 (1977).

I conclude that in enacting sec. 940.09 the Wisconsin legislature has gone beyond its constitutional powers. The person who drives while intoxicated should be punished. The driver is blameworthy. A person convicted of operating a vehicle while intoxicated is punished under Wisconsin law with a civil forfeiture or a criminal penalty depending on whether it is a first offense. The drunk driver may be convicted of homicide if the state proves beyond a reasonable doubt that his intoxication or faulty driving while under the influence of an intoxicant caused the death. In summary, I conclude that this statute providing for imprisonment of up to 5 years without requiring the state to prove a causal connection between a defendant's wrongful conduct (that is, intoxication or faulty operation of the vehicle while under the influence of an intoxicant) and the resulting harm (death) violates basic notions of fairness embodied in the due process clause and is unconstitutional.

In light of this analysis, I can not accept either the state's or the majority's defenses of this statute. I cannot accept the state's argument that a direct causal connection between the intoxication and death (or between faulty operation and death) is not required because sec. 940.09 creates a version of the crime of misdemeanor-manslaughter. The state views the crime of misdemeanor-manslaughter as eliminating causation and as basing liability for a homicide on the fact that the killing occurs during the commission of some other act proscribed by the law.[5]

Although some courts have held that causation is not required in misdemeanor-manslaughter or felony-murder, several commentators conclude that relieving the state of the burden of proving causation between the proscribed

---

[5] I do not understand the discussion in the majority opinion characterizing the offense of operating a motor vehicle while under the influence of an intoxicant as *malum prohibitum.* Pages 593, 594.

conduct and the harm does not comport with generally accepted principles of criminal law. *See, e.g.,* LaFave & Scott, *Criminal Law,* sec. 35, p. 264, sec. 79, pp. 596, 601–602 (1972) ; Wilner, *Unintentional Homicide in the Commission of an Unlawful Act,* 87 U. Pa. L. Rev. 811 (1939). Wisconsin's felony-murder statute, sec. 940.02 (2), comports with the commentators' view; it requires the state to prove that the death occurred "as a natural and probable consequence of the commission of or attempt to commit a felony." See *Hoffman v. State,* 88 Wis. 166, 179, 59 N.W. 588 (1894) ; *Brook v. State,* 21 Wis. 2d 32, 41, 123 N.W.2d 535 (1963) ; and *Boyer v. State,* 91 Wis. 2d 647, 670, 284 N.W.2d 30 (1979).[6] Wisconsin does not have a misdemeanor-manslaughter statute.

The majority attemps to invoke strict liability as a means of eliminating the need for causation. The concepts of negligence per se and strict criminal liability, which are discussed by the majority at page 595, relate, however, to the element of scienter, not causation. Scienter is not the determinative issue in this case. Even in strict liability crimes, causation must be proved if the statute punishes a harm.[7]

The majority opinion can also be read to imply that sec. 940.09 (1) (a) does not eliminate the element of causation between the intoxication (or the faulty operation of a vehicle while under the influence of an intoxi-

---

[6] The majority's reliance on the *Schulter* case is misplaced. Pages 594, 595. The statute construed in that case required that the death be a consequence of the crime, that is, that the death be caused by the commission of the crime. Sec. 940.09(1)(a) requires that death be caused by the operation of the vehicle. Operating a vehicle is not in and of itself a crime.

[7] *See* Model Penal Code sec. 2.03(4) (Proposed Official Draft 1962), providing that in strict liability crimes—that is liability without scienter—if a harm (*e.g.,* pollution of a stream) is an element of the offense, then there is no liability unless the harm "is a probable consequence of the actor's conduct."

cant) and the death, but rather implicitly incorporates the element of causation. The majority opinion seems to say that the statute rests on the premise that a direct causal connection inheres between intoxication and death. Pages 593, 594.[8]

This reasoning must fail. If sec. 940.09(1)(a) is viewed as incorporating, albeit silently, a mandatory rebuttable presumption that the intoxicated condition caused the death, the presumption would be an unconstitutional denial of due process because it shifts to the defendant the burden of persuading the fact finder as to an element of the crime. *Sandstrom v. Montana,* 442 U.S. 510 (1979) ; *Muller v. State,* 94 Wis. 2d 450, 475–78, 289 N.W.2d 570 (1980).

Drunk driving is reprehensible conduct. Anyone who operates a vehicle while under the influence of an intoxicant should be punished, whether or not there is injury to person or property. When the drunk driver causes injury, the punishment should be increased. The drunk driver should not, however, be punished for homicide unless the driver's intoxication or faulty operation while under the influence of an intoxicant caused the death. Because sec. 940.09(1)(a) permits the state to punish a driver for homicide with 5 years' imprisonment when

---

[8] The majority opinion seems to find a sufficient causal connection in the statute by speaking of the negligent act of driving while intoxicated as the conduct which causes the death instead of speaking of the operation of the vehicle as the conduct causing the death. The proffered rationale is that "because driving under the influence of an intoxicant is *malum prohibitum* it is impossible to separate the intoxication from the driving or the driving from the intoxication." Pages 593, 594.

The majority opinion also asserts that the affirmative defense provided for in sec. 940.09 is available "for the situation where there is an intervening cause between the intoxicated operation of the automobile and the death of the individual." Page 596. *See also* pp. 598–600. Referring to an "intervening cause" presupposes that the defendant's intoxicated condition while driving was an antecedent cause.

death occurs by chance, I conclude the statute is unconstitutional. Accordingly I must dissent from the court's opinion.

MOTION FOR RECONSIDERATION. *Denied.*

PER CURIAM. The issue raised by defendant-appellant in his motion for reconsideration was considered by the court to be meritless. The motion for reconsideration is denied.