WATERMAN, Justice
(concurring specially).
I specially concur. I join the majority in affirming Adams’ conviction for vehicular homicide and in rejecting Adams’ claim the State must separately prove the driver’s intoxication (as opposed to driving while intoxicated) caused the death for a conviction under Iowa Code section 707.6A(1) (2007). I also agree with the majority’s conclusion that the Iowa State Bar Association (ISBA) Criminal Jury Instruction 710.1 correctly states the law and should be given in vehicular homicide (intoxication) cases of this type. I write separately to elaborate on my reasons.
The text of the statute does not require a separate finding Adams’ intoxication caused the death. Our task is to interpret the statute as written:
A person commits a class “B” felony when the person unintentionally causes the death of another by operating a motor vehicle while intoxicated, as prohibited by section 321 J.2.
Iowa Code § 707.6A(1). The fighting issue is framed by a decision of the Indiana Supreme Court construing equivalent statutory language[10] to hold causation is proven by showing “the driver ran into the victim.” Micinski v. State, 487 N.E.2d 150, 154 (Ind.1986). The court reasoned, “We find nothing in the statute to indicate the General Assembly intended to require that the State prove a causal link between the driver’s intoxication and the fact the injury resulted from his driving.” Id. The Micinski court rejected the argument that the jury should be asked, “ ‘Is it the driver’s intoxication that caused him to hit the victim?’ ” Id. The court concluded that this was not what the legislature intended. Rather, the focus should be “on the driver’s acts and not on speculation about whether he could have stopped if he had been sober. If the driver’s conduct caused the injury, he commits the crime.” Id. As I explain below, application of our own rules of statutory interpretation leads to the same conclusion here.
The ISBA criminal jury instruction on vehicular homicide (intoxication) correctly applies the statutory elements of the offense.[11] The majority faults the district *375 court for rephrasing the second element to replace “defendant’s act or acts set out in Element 1” with simply, “defendant’s actions” in the instruction given at trial. I think it is clear in context that the actions referenced in the instruction given were Adams’ operation of his vehicle while intoxicated. The revision was immaterial, and the instruction given was not erroneous.
The legislature chose to impose greater criminal penalties on people who cause fatal accidents while driving drunk, based on the common knowledge that alcohol impairs judgment, motor skills, perception, and reaction times. It is safe to assume that alcohol is a contributing factor in most accidents involving drunk drivers, which is why the legislature’s policy choice makes sense. But, the legislature stopped short of requiring the jury to separately find the intoxication itself caused the accident. Adams’ trial counsel therefore lacked a valid objection to the instruction.
To provide context to explain why the jury was properly instructed, it is worth reviewing the facts supporting the jury verdict.
A. Facts Supporting the Jury Verdict. Tragedy results when a drunk driver and bicyclist meet on the road. The accident occurred shortly before 11 p.m., Friday, December 8, 2006, after an evening that Adams spent with his friend, Sean Erickson, drinking at a bring-your-own beer party in Des Moines. Adams drove because Erickson’s license was suspended from a prior drunk-driving conviction. They bought beer at a local gas station; Adams picked up a twelve-pack of Budweiser cans and Erickson purchased a twenty-pack of Budweiser bottles. They arrived at the party between 5:30 p.m. and 5:45 p.m. and began drinking their beer. When they departed about five hours later, they had four cans and two bottles left, twenty-six fewer twelve-ounce beers than they brought. Another partygoer drank a thirty-pack of Busch Light during the party. A witness, Matthew Montgomery, testified Adams and Erickson appeared intoxicated at the party. Montgomery himself smoked marijuana throughout the party. Adams testified he sipped three to four cans of beer and opened a bottle of Budweiser, but admitted he may have consumed‘twice that many. Adams denied he was under the influence when he left the party and asserted others drank some of his beer. Erickson testified he got “pretty drunk” at the party and told his cousin later that both he and Adams were intoxicated. Other partygoers testified Adams was “aggressive” and “arrogant” at the party. Montgomery described Adams as “a little unsteady on his feet” and that [h]is speech seemed to be a little bit slurred.” Another guest testified Adams was “loud *376 and obnoxious,” and “the entire time [she] saw him he had a can of beer or a bottle of beer in his hand.” Montgomery also testified Adams rocked back and forth, wobbled at the party, and appeared too intoxicated to drive home.
Adams and Erickson left together in Adams’ Monte Carlo about 10:45 p.m. They stashed in the backseat the six beers remaining from the thirty-two full beers they brought to the party. The right front headlight was not functioning. Adams was driving west on Park Avenue when Brown was bicycling in the same direction on that road in the right lane near the curb. Adams testified he looked down to change the satellite radio station when his car hit something that slammed into the windshield and the windshield collapsed into the front seat. Adams kept driving. Erickson said, “Dude, we just hit something.” Adams replied, “No f--s — , Sean, what was it ... what the f— was that?” A block later, when questioned by Erickson, Adams exclaimed, “Shut the f— up and let me think for a minute.” They drove home and never reported the accident. A passerby found Brown’s body around 11 p.m., and Brown was pronounced dead at the scene. She had a fractured skull. The court of appeals affirmed Adams’ conviction for vehicular homicide and noted:
It is difficult to describe in a judicial opinion the impression conveyed by the post-accident photographs of Adams’ vehicle. The windshield, where Brown’s head and body hit the car, was smashed in, shattered, and collapsed into the front passenger seat. Yet Adams claimed not to have realized that he had hit someone.
This is powerful evidence of intoxication. Any person in possession of his faculties would have realized he had hit someone. The jury could infer Adams was intoxicated simply by his denial that he knew he hit the victim and continued driving.
The verdict was also supported by expert medical testimony. Polk County Medical Examiner, Gregory Schmunk, testified intoxication reduces visual acuity and impairs perception:
You don’t see things as well as you would normally when you were sober. Either you physically are not seeing them if you’re at a fairly high level of intoxication, or you’re just not paying attention to what your visual cues are.... [Y]ou may be looking directly at someone, but you’re paying no attention to them because your mind ... or your thinking functions are affected.
[[Image here]]
... You may see something but not perceive it. You’re not paying attention.
When Adams heard news reports of Brown’s fatal hit-and-run death, he bought a tarp to cover his Monte Carlo. He turned himself in two days later, too late for any chemical test to determine his blood alcohol level at the time of the accident. Adams’ conduct in fleeing the scene showed impaired judgment and consciousness of guilt. The court of appeals concluded sufficient evidence supported Adams’ convictions for vehicular homicide (intoxication), operating a motor vehicle while intoxicated (OWI), and leaving the scene of an accident.
The majority correctly allows the decision of the court of appeals to stand as the final judgment that the evidence was sufficient to convict Adams of vehicular homicide while intoxicated.
B. Interpretation of Iowa Code Section 707.6A(1). The majority correctly rejects Adams’ belated argument that the statute requires proof his intoxication caused Brown’s death. Application of our well-settled principles of statutory inter *377 pretation shows the proof required is simply that the defendant’s act of driving while intoxicated caused the death.
“The polestar of statutory interpretation is the intent of the legislature.” State v. Carpenter, 616 N.W.2d 540, 542 (Iowa 2000). In State v. Comried, we reiterated the principles of interpretation most pertinent to construing section 707.6A(1):
“When we interpret a statute, we attempt to give effect to the general assembly’s intent in enacting the law. Generally, this intent is gleaned from the language of the statute. To ascertain the meaning of the statutory language, we consider the context of the provision at issue and strive to interpret it in a manner consistent with the statute as an integrated whole. Similarly, we interpret a statute consistently with other statutes concerning the same or a related subject. Finally, statutes are interpreted in a manner to avoid absurd results and to avoid rendering any part of the enactment superfluous.”
Also, “[i]n construing a statute denouncing the offense of driving while under the influence of intoxicants, the manifest purpose of the statute may not be ignored. Although such a statute is a penal statute and must be strictly construed, such a statute, since it is designed to protect the public, should be liberally or reasonably construed in order to effect its purpose to protect, as far as may be, every person lawfully on the highway, and to reduce the hazard of prohibited operation of a motor vehicle to a minimum.”
693 N.W.2d 773, 775 (Iowa 2005) (quoting State v. Pickett, 671 N.W.2d 866, 870 (Iowa 2003) (first quotation); 61A C.J.S. Motor Vehicles § 1385, at 274 (2002) (second quotation)).
A conviction for vehicular homicide under 707.6A(1) rests on a predicate offense
of operating a motor vehicle in violation of Iowa Code section 321J.2. In Comried, we noted “the purpose of chapter 321J is ‘to reduce the holocaust on our highways[,] part of which is due to the driver who imbibes too freely of intoxicating liquor.’ ” Id. (quoting State v. Kelly, 430 N.W.2d 427, 429 (Iowa 1988)); see also State v. Garcia, 756 N.W.2d 216, 220 (Iowa 2008) (observing the purpose underlying Iowa Code section 321J is “ ‘to help reduce the appalling number of highway deaths resulting in part at least from intoxicated drivers.’ ” (quoting State v. Wallin, 195 N.W.2d 95, 96 (Iowa 1972))).
The majority correctly rejects Adams’ effort to add a proof requirement not found in the statute — that his intoxication proximately caused Brown’s death, as opposed to simply his act of driving while intoxicated. As the Wisconsin Supreme Court aptly observed, it is impossible and unnecessary to separate the intoxication from the act of driving:
The legislature has determined that combining the operation of a motor vehicle with being in an intoxicated state is conduct which is malum prohibitum and is pervasively antisocial.... The commission of the offense does not require any erratic or negligent driving. Because driving under the influence of an intoxicant is malum prohibitum it is impossible to separate the intoxication from the driving or the driving from the intoxication....
... The statute does not include as an element of the crime a direct causal connection between the fact of defendant’s intoxication, conceptualized as an isolated act, and the victim’s death. Under this statute there is an inherently dangerous activity in which it is reasonably foreseeable that driving while intoxicated may result in the death of an individual. The legislature has deter *378 mined this activity so inherently dangerous that proof of it need not require causal connection between the defendant’s intoxication and the death.
State v. Caibaiosai, 122 Wis.2d 587, 363 N.W.2d 574, 577-78 (1985); see also People v. Martin, 266 Ill.App.3d 369, 203 Ill.Dec. 718, 640 N.E.2d 638, 646 (1994) (“[I]n the case of a defendant convicted of DUI [driving under the influence], the law holds him accountable for precisely those harms actually risked by his conduct — namely, that he might seriously injure pedestrians on or next to the roadway, or that he might crash his vehicle into other vehicles on the roadway, seriously injuring their occupants.”).
The State correctly observes section 707.6A(1) imposes a presumption the driver’s intoxication proximately caused the accident. This conclusion is reinforced by the statute’s imposition of liability for even trace amounts of controlled substances. See Comried, 693 N.W.2d at 775-76, 778 (construing sections 321J.2(l)(c) and 707.6A(1)). A driver with only a trace amount of methamphetamine in his blood may, in fact, be unimpaired, yet if he gets in a fatal accident, he can be found guilty of vehicular homicide. Id. at 778. The Comried court observed:
The legislature could reasonably have imposed such a ban because the effects of drugs, as contrasted to the effects of alcohol, can vary greatly among those who use them. One court has observed that,
since the manufacture and distribution of illicit drugs are unregulated and because the drugs’ potency varies, the effects are unpredictable. Therefore, ... there is no level of use above which people can be presumed impaired or below which they can be presumed unimpaired.
Id. at 776 (quoting State v. Phillips, 178 Ariz. 368, 873 P.2d 706, 708 (Ariz.Ct.App.1994)). We recognized section 321 J.2(l)(c) prohibits “people from operating motor vehicles with controlled substances in their bodies, whether or not they are under the influence.” Id. We affirmed Comried’s conviction under section 707.6A(1) because he was in a fatal accident while he had a detectable amount of methamphetamine in his blood. Id. at 778 (“ [A]ny amount’ means any amount greater than zero.”). Obviously, the jury, to convict, did not separately find that the trace amount of methamphetamine caused Comried’s fatal accident. A trace amount is unlikely to cause an accident. If a trace amount of a drug can support a conviction, it is nonsensical to require proof the alcohol an intoxicated driver consumed caused the accident. Comried was decided unanimously a mere seven years ago. Stare decisis is yet another compelling reason to reject Adams’ interpretation.
Because the effects of alcohol are better known, the legislature requires proof the defendant was driving “while intoxicated.” Iowa Code § 707.6A(1). Intoxication is presumed at a blood alcohol level of .08. Id. § 321J.2(1)(6). But, proof of intoxication supports a conviction without a separate finding the intoxicant caused the accident. The legislature intentionally stopped short of requiring proof that the alcohol intoxication, or the consumption of any amount of illicit drugs, actually caused the fatal accident. It did so to avoid the difficulties of proof separating intoxication from driving that the Wisconsin Supreme Court noted in Caibaiosai, 363 N.W.2d at 577-78. This is not unusual in criminal law. For example, armed robbery requires a robbery that occurred while the defendant was armed. Iowa Code § 711.2. The State need not prove the weapon was necessary to accomplish the robbery.
*379 Our legislature knows how to draft vehicular homicide penal statutes that require the jury to specifically find the predicate driving violation proximately caused the death. The eluding provision, section 707.6A(2)(6), for example, criminalizes “caus[ing] the death of another by ... [e]luding or attempting to elude a pursuing law enforcement vehicle ... if the death of the other person directly or indirectly results from the violation.” (Emphasis added.) That italicized language was not included in section 707.6A(1) or (3) which govern fatal accidents that happen when the defendant is driving “while” intoxicated or drag racing.[12] This is because drag racing and driving while intoxicated are both inherently dangerous. “[Legislative intent is expressed by the omission as well as by [the] inclusion of statutory terms.” See Oyens Feed & Supply, Inc. v. Primebank, 808 N.W.2d 186, 193 (Iowa 2011) (citation and internal quotation marks omitted); State v. Beach, 630 N.W.2d 598, 600 (Iowa 2001). If the legislature had intended to require proof the defendant’s intoxication caused the victim’s death, it would have added conditional language to section 707.6A(1), such as it included in section 707.6A(2)(6). Adams asks us to effectively rewrite the statute to add such a requirement the legislature chose to omit.
The Dram Shop Act provides an example where the legislature clearly conditioned liability on a finding the driver’s intoxication proximately caused the victim’s harm. Iowa Code section 123.92 gives victims of drunk drivers a statutory right to sue the licensed vendor who sold alcoholic beverages to a person the seller knew or should have known was intoxicated or would become intoxicated. Iowa Code § 123.92. However, the legislature expressly provided the following affirmative defense: “If the injury was caused by an intoxicated person, a permittee or licensee may establish as an affirmative defense that the intoxication did not contribute to the injurious action of the person.” Iowa Code § 123.92. The legislature provided no such affirmative defense to a charge of vehicular homicide while intoxicated. See id. § 707.6A(1). It is not our role to create such a defense, much less impose another element of the offense the State must prove beyond a reasonable doubt.
In the rare case in which the evidence clearly establishes alcohol is not a factor because a sober driver would have struck the victim under the same circumstances, Iowa law recognizes a defense based on sole proximate cause or superseding cause. See State v. Hubka, 480 N.W.2d 867, 869 (Iowa 1992) (“[T]he defendant may be relieved of criminal responsibility if a court finds that the intervening events are such as to break the chain of causal connection between the defendant’s conduct and the victim’s death.”); see also Micinski, 487 N.E.2d at 154 (“This is not to say that a drunk driver who hits a child who has run out from between two parked cars is not entitled to ask a jury to find him not guilty because there is reasonable doubt whether he caused the collision.”); State v. Rivas, 126 Wash.2d 443, 896 P.2d 57, 62 (1995) (“[A]n intoxicated defendant may still avoid responsibility for a death which results from his or her driving if the death is caused by a superseding, intervening event.”).
In Hubka, our court affirmed the defendant’s conviction for vehicular homicide under section 707.6A(1), rejecting the ar *380 gument that the sole proximate cause of the victim children’s death was the failure to use proper child seat restraints. 480 N.W.2d at 870. In State v. Wieskamp, our court of appeals reversed a conviction for vehicular homicide because “as a matter of law ... a sober person driving with reasonable care would have struck and killed the victim.” 490 N.W.2d 566, 567 (Iowa Ct.App.1992). In Wieskamp, an intoxicated driver ran over the victim who was “lying in the street covered solely in dark clothing in an unlighted area of the highway.” Id. The Wieskamp court emphasized there was “no evidence in the record to dispute Sgt. Sellars’ opinion testimony that a sober person would not have seen the victim ‘until they were right on top of them.’ ” Id. By contrast, the record here includes expert testimony that Adams’ intoxication would have impaired his night vision and perception. It was for the jury to decide whether Adams’ act of driving while intoxicated caused the accident.
Our interpretation of the statute is consistent with State v. Rullestad, 259 Iowa 209, 143 N.W.2d 278 (1966). That case predated the codification of section 707.6A(1) in 1986. 1986 Iowa Acts ch. 1220, § 41. The Rullestad court stated that “it is necessary to show a direct causal connection between defendant’s drunken driving and the death.” Id. at 212, 143 N.W.2d at 280. The Rullestad court, however, did not attempt to separate out the defendant’s intoxication as a cause of the death, apart from the defendant’s act of driving while intoxicated. Id. Proof for a
conviction under Rullestad is the same as proof for conviction under section 707.6A(1) — the jury must find the defendant’s act of operating a motor vehicle while intoxicated caused the death, not that the intoxication itself was a cause.
Other courts construing equivalent statutory language have expressly rejected arguments the State must prove the intoxication was a proximate cause of the victim’s death. See, e.g., State v. Benoit, 650 A.2d 1230, 1233 (R.I.1994) (“We do, however, agree with the state’s contention that the statute does not require the intoxication of the defendant to be a proximate cause of the death.... Therefore, all the state need prove is that the defendant’s operation of his or her motor vehicle was a proximate cause of the death in question occurring while the defendant was legally intoxicated.”);[13] see also People v. Garner, 781 P.2d 87, 89 (Colo.1989) (“The statute does not require evidence that the intoxication affected the driver’s operation in a manner that results in a collision. The clear intent of the legislature is to punish and thereby to deter the conduct of voluntarily driving while intoxicated.”);[14] Magaw v. State, 537 So.2d 564, 566-67 (Fla.1989) (“This legislation requires a causal connection between the driver’s conduct (the operation of a motor vehicle) and the resulting accident.... Moreover, the state is not required to prove that the operator’s drinking caused the accident.”);[15] Micinski, 487 N.E.2d at 154; Rivas, 896 P.2d at 61 (approving a jury instruction comment stating the *381 amended statute modified existing caselaw “by changing the causal connection ... between the defendant’s intoxicated condition and the victim’s death to a causal connection between the defendant’s operation of a motor vehicle and the victim’s death”);[16] Caibaiosai, 363 N.W.2d at 577-78.[17] These cases are persuasive authority contrary to Adams’ proffered interpretation of section 707.6A(1).
For these additional reasons, I concur with the majority opinion.

. Ind.Code § 9-4-l-54(b)(2) (1982) ("A person who operates a vehicle while intoxicated commits a Class A misdemeanor. However, the offense is a Class C felony if it results in the death of another person and is a Class D felony if the offense results in serious bodily injury (as defined by IC 35-41-1-2), other than death, to another person.”).

. ISBA Criminal Jury Instruction No. 710.1 provides:
*375 710.1 Homicide By Vehicle (Intoxication) — Elements. The State must prove both of the following elements of Homicide By Vehicle:
1. On or about the_day of_, 20_, the defendant:
a. operated a motor vehicle while under the influence of alcohol or a drug or a combination of such substances; or
b. operated a motor vehicle while having an alcohol concentration of [.08] or more, or
c. operated a motor vehicle while any amount of a controlled substance was present, as measured in the defendant's blood or urine.
2. The defendant’s act or acts set out in Element 1 unintentionally caused the death of (victim).
If the State has proved both of the elements, the defendant is guilty of Homicide by Vehicle. If the State has failed to prove either of the elements, the defendant is not guilty of Homicide by Vehicle (and you will then consider the charge of_ as explained in Instruction No-).

. "A person commits a class 'D' felony when the person unintentionally causes the death of another while drag racing, in violation of section 321.278.” Iowa Code § 707.6A(3) (emphasis added).

. R.I. Gen. Laws § 31-27-2.2(a) (1982) (“When the death of any person other than the operator ensues as a proximate result of an injury received by the operation of any vehicle, the operator of which is under the influence of any intoxicating liquor ..., the person so operating such vehicle shall be guilty of 'driving under the influence of liquor or drugs, resulting in death.’ ”).

. Colo.Rev.Stat. § 18-3-106(l)(b)(I) (1986) ("If a person operates or drives a motor vehicle while under the influence of any drug or intoxicant and such conduct is the proximate cause of the death of another, he commits vehicular homicide. This is a strict liability crime.”).

. Fla. Stat. § 316.193(1) (Supp.1986) (defining "driving under the influence” as occurring only when "[t]he person is under the *381 influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893, when affected to the extent that his normal faculties are impaired”).

. Wash. Rev.Code § 46.61.520 (1991) ("When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle: (a) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502....”).

. Wis. Stat. § 940.09(l)(a) (1984) (stating a person commits a Class D felony who "(1) causes the death of another, (2) by the operation of a vehicle, (3) while under the influence of an intoxicant”).