HOFFMAN, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 9 — May 25, 1894.*

*Criminal law and practice: Amending record to show presence of defendant during trial: Murder in third degree.*

1. The record in a murder case, which through the neglect of the clerk fails to show that defendant was present at every stage of the trial, conviction, and sentence, may be amended by entries *nunc pro tunc* showing that fact, upon the testimony of the clerk and sheriff, at a subsequent term and after defendant has sued out a writ of error,— he being present and heard on the motion to amend.

2. Under sec. 4345, R. S., defining murder in the third degree as a killing, without any design to effect death, by a person engaged in the commission of any felony, and sec. 4377, making an assault with intent to do great bodily harm a felony, one cannot be convicted of murder in the third degree on the ground that he was engaged in an assault with intent to do great bodily harm upon a person other than the deceased, where the evidence shows that such assault was at an end before the killing occurred.

ERROR to the Circuit Court for *Marathon* County.

The plaintiff in error was tried upon an information charging him with murder in the first degree, by killing and murdering William Herzog with a premeditated design to effect his death, and was found guilty of murder in the third degree, and sentenced to ten years imprisonment in the state prison. He sued out a writ of error, and, after return to this court, it was assigned as error that there was

nothing in the record to show that the plaintiff in error was personally present in court during the various stages of the trial and conviction. When the writ was sued out and return made, the record showed only that the accused was present when the information was read to him, and at no other time. At a subsequent term of the court, upon notice to the plaintiff in error and his attorneys and by order of the circuit court, the plaintiff in error was brought from the state prison, where he was serving his sentence, to the court room; and on the evidence of the clerk and sheriff, and on motion of the district attorney, after argument on his behalf by his counsel, he being present, the record was amended *nunc pro tunc* so as to show the presence of the plaintiff in error at each and every stage of the trial, conviction, and sentence. The amendment was made solely upon the testimony of the sheriff and clerk as to their recollection of the fact of his presence in court, and without memoranda, minute, or other record from which either of them could refresh his memory. He was then remanded to the state prison, and the action of the circuit court in the premises was duly certified to this court as a part of the record in the cause. The information was filed against Albert Hoffman and Ferdinand Heise, as well as the plaintiff in error, but the two former were discharged at the close of the evidence.

The principal question arising upon the bill of exceptions is whether, upon the facts disclosed in evidence, the plaintiff in error was properly convicted of murder in the third degree. It was contended on the part of the state that, at the time the killing occurred, the plaintiff in error had raised a chair over one Risto's head and made an assault upon him for the purpose of doing him great bodily harm, within the meaning of sec. 4377, R. S.; and that, while engaged in the commission of this felony, he killed the said William Herzog, who had interfered to prevent the

plaintiff in error from carrying out his design to inflict great bodily harm on Risto, but without any design to effect his death; and that therefore he was guilty of murder in the third degree, under sec. 4345, R. S.; and that *Hoffman's* felonious design and attempt against Risto furnished the implied malice necessary to make the killing of Herzog murder in the third degree.

The killing occurred at a masked ball at a tavern and saloon in Rib Falls, Marathon county. Among the participants in the dance were the defendant and two of his brothers and his sister, and Robert Risto and two of his brothers. The defendant and Herzog were strangers, and first met on that occasion. Some of the parties became very much intoxicated and violent. The defendant and also his brother Albert got into an altercation with Robert Risto in the hall where the dance was proceeding, and the defendant and Risto had each exhibited a knife to the other, by way of caution or threat. Robert Risto and others started down the stairs, and the defendant and his brother followed. As Robert Risto went out of the hall door, he struck Albert Hoffman in the face, and there was a rush down the stairway, and the defendant and his brother Albert caught up with Risto in the hall below, where the stairway landed, and at the door of the saloon there was a struggle, in which the defendant, Albert Hoffman, Robert Risto, and his brother Gust. Risto were engaged. This was suppressed by the wife of the proprietor and others.

The saloon was about 23x27 feet, with an outside door near the middle of the front, and a door in the back of the saloon opened into the liquor room. Going from the saloon there was a hallway about ten feet long, on the left of which is a sitting room, and on the right an alcove, in which there was a wash room, a sink, etc. At the end of the hall is a door opening into the dining room, and going through

this door there is another to the left, opening into the stair-
way to a landing, where there is a door opening into the
dance hall.   In the struggle that ensued when the parties
came downstairs into the saloon, it appeared that Robert
Risto had snatched a metal faucet out of a beer keg and
hurled it at the Hoffmans, striking Albert Hoffman on the
hand and inflicting some injury.   About eight or ten min-
utes after this difficulty had been suppressed, during which
Robert Risto went outdoors and came in again at the din-
ing room and so into the saloon, words passed and angry
demonstrations occurred between him and Albert Hoff-
man in respect to the injury the latter received on his hand,
when another encounter took place, which, though stated
somewhat differently by those who saw it, yet with respect
to the point material to the case, there does not appear to
be any controversy or conflict of testimony.   Albert Hoff-
man and Robert Risto were standing up and making mo-
tions to fight with their fists.   A Mr. Wolfe testifies:
"Then I saw *August Hoffman* take up a chair to strike
Risto.   Then Herzog, the deceased, took hold of the chair,
and *August*, the defendant, let go of it and was going to
strike Herzog.   He let it go and made motions to strike
him.   When Herzog took hold of the chair I think he set
it down.   I think the defendant let go of it.   When the de-
fendant took the chair he was about to face Risto, and
was about five feet off, and Albert Hoffman made motions
to strike Risto.   The defendant's back was turned to Her-
zog, and when the latter seized the chair the defendant
turned around and put himself in a parrying position.
Herzog let go of the chair and struck at him.   I saw him
strike the defendant in the face, and saw him fall backward.
Herzog stepped up towards the defendant, made a step for-
ward, and knocked him down.   The defendant could have
struck Herzog if he had wanted to when he first let go of
the chair.   He had the chair about half-way up when Her-

zog took hold of it, and it was still moving." The witness Franke, who gave a pretty clear account of the encounter, testified: "I saw Albert Hoffman quarreling with Robert Risto, making motions to hit him. Risto was doing nothing. Then I saw the defendant take up a chair to knock Risto down, and Herzog was standing behind him, and took the chair away from him,— took it by the legs. Defendant let the chair go, and turned around to Herzog, and made motions to hit him. Herzog dropped the chair, and I saw him strike the defendant in the face. He fell down backward, clear to the floor. He jumped up again to his place, and I looked around and saw Herzog fall down near the counter. When the defendant jumped up he jumped to the place where I saw Herzog fall. Then the people rushed together and I couldn't see. Next, saw Heise take a chair and strike Herzog, and then saw Herzog going around the saloon with his hands over his head. We took him over to the barber's chair. When I went into the saloon Albert Hoffman and Risto were quarreling. That was the only thing that looked like a fight. When Herzog took hold of the chair he held it in his hand and said: 'Two against one is too many.' The defendant turned around and made motions to hit Herzog, and he dropped the chair, and I saw that he struck the defendant first." Other testimony showed that when the defendant turned around quickly towards Herzog he said sharply, "What?" and then had no weapon in his hand, so far as the evidence shows; that he said something, or tried to, as the chair was taken from him. It is claimed, and the testimony tends to show, that when the defendant got up after having been knocked down by Herzog he drew his knife, and in the struggle that ensued they both were thrown or fell to the floor, Herzog on top of the defendant; and in the struggle the fatal thrust or cut with the defendant's knife was given, which resulted in Herzog's

death.   There is no evidence showing, or tending to show, that after the chair was taken from the defendant he made any further demonstration against Risto, or that any one did.   Risto testified substantially that he went out of the saloon and did not return until after the affray was over. The evidence shows that the assault on Risto by the defendant had ceased before Herzog knocked the defendant, *Hoffman*, down, and clearly so before the latter used any violence upon or against Herzog.   There is no testimony in the record to show that any assault was being made or violence directed to or against Risto at the time Herzog knocked the defendant, *Hoffman*, down.   The evidence further shows that after Herzog and the defendant fell to the floor, as above stated, they both got up again, and the defendant struck Herzog a blow with a knife or other sharp instrument on the head when he was standing by the counter; that the fatal wound was in the left side of the chest, inflicted with a knife, penetrating the chest to the left of the medial line between the second and third ribs, three-quarters of an inch in length.   There was a contused wound back of the upper part of the right ear, and an incised wound in the scalp on the left of the medial line down to the skull.   The wound that caused death was the knife wound in the chest.

On the subject of murder in the third degree, the circuit' court charged the jury as follows: " Section 4345 reads as follows: ' The killing of a human being, without any design to effect death, by a person engaged in the commission of any felony, shall be murder in the third degree.'   You will observe that the prominent features of this statute are that the killing must be done without a design to effect death, and must be done by a person while engaged in the commission of a felony.   The word ' felony,' as used in the statute, means an offense or crime punishable by imprisonment in the state prison.   It is claimed on the part of the

state that, just prior to the affray with Herzog, the witness Albert Hoffman was engaged in a quarrel with one Robert Risto, and that the defendant, *August Hoffman*, advanced upon Risto with a chair, and turned to strike him; that Herzog at that time interfered and prevented *August* using the chair on Risto, and then the fatal affray ensued. It is claimed by the state that the defendant was engaged in making an assault upon Robert Risto with intent to do him great bodily harm. If such was the case he was engaged in the commission of a felony, because an assault with intent to do great bodily harm is punishable by imprisonment in the state prison. So, if you find from all the evidence, beyond a reasonable doubt, that the defendant killed William Herzog without a design to effect his death, while he, the defendant, was engaged in committing an assault with intent to do great bodily harm upon Robert Risto, and such killing is not justifiable, then you should find the defendant guilty of murder in the third degree; that the defendant claims, without any provocation on his part, the deceased struck him a violent blow in the face, knocking him down; and that thereupon he struck him a blow with his knife."

For the plaintiff in error there was a brief by *Mylrea, Marchetti & Bird*, and oral argument by *W. H. Mylrea.* They contended, *inter alia*, that there was no authority whatever for the amendment showing that the defendant was personally present in court during the several stages of the trial; that, if permissible under any circumstances, it can only be made when there is some record evidence by which to amend, showing that the amendment is in accordance with the facts. *Makepeace v. Lukens*, 27 Ind. 435; 3 Bl. Comm. 407; 1 Tidd, Pr. 712; *Queen v. Tutchin*, 1 Salk. 51; *Boyd v. Blaisdell*, 15 Ind. 74; *Schoonover v. Reed*, 65 id. 313; *Spafford v. Janesville*, 15 Wis. 474, 477; *Albers v. Whitney*, 1 Story, 312; *Kentzler v. C., M. & St. P. R. Co.* 47 Wis. 641, 646; *State ex rel. Graves v. Primm*, 61 Mo. 167;

Hoffman vs. The State.

*State v. Jeffors*, 64 id. 376; *Branger v. Chevalier*, 9 Cal. 351; *Swain v. Naglee*, 19 id. 127; *Dreyfuss v. Tompkins*, 67 id. 339; *Frew v. Danforth*, 126 Ill. 242; *Gebbie v. Mooney*, 121 id. 255; *Dougherty v. People*, 118 id. 160; *Gillett v. Booth*, 95 id. 183; *Dunham v. South Park Comm'rs*, 87 id. 185; *Church v. English*, 81 id. 442; *Howell v. Morlan*, 78 id. 163; *Waldo v. Spencer*, 4 Conn. 71; *Raymond v. Smith*, 1 Met. (Ky.), 65; *Summersett v. Summersett's Adm'r*, 40 Ala. 596; 1 Bish. Crim. Proc. sec. 1343; 20 Am. & Eng. Ency. of Law, 525.

For the defendant in error there was a brief by the *Attorney General* and *J. M. Clancey*, Assistant Attorney General, and oral argument by *Mr. Clancey*. They argued, among other things, that a mere clerical error in the record may be amended, no matter how important a part thereof it may be. Freeman, Judgm. sec. 72; 20 Am. & Eng. Ency. of Law, 524; *Holman v. State*, 79 Ga. 155; *Green v. State*, 19 Ark. 189; *State v. Littlefield*, 3 R. I. 124; *State v. Clark*, 18 Mo. 432; *West v. State*, 22 N. J. Law, 212. The correction may be made after a writ of error has been sued out. *Kelly v. C. & N. W. R. Co.* 70 Wis. 335; *Wyman v. Buckstaff*, 24 id. 477; *Chestnutt v. Pollard*, 77 Tex. 86. And after the term at which the judicial act was performed. *Hill v. Hoover*, 5 Wis. 354. Record evidence is not necessary. *Balch v. Shaw*, 7 Cush. 282; *Bilansky v. State*, 3 Minn. 427; *In re Wight*, 134 U. S. 137; *Rousset v. Boyle*, 45 Cal. 64; *Fay v. Wenzell*, 8 Cush. 315; *Savage v. Blanchard*, 148 Mass. 348; *Gloucester v. Co. Comm'rs of Essex*, 106 id. 579; *Marsh v. McKenzie*, 99 id. 64.

PINNEY, J. 1. It is insisted that under the decision in the case of *French v. State*, 85 Wis. 400, 409, the failure of the record, as it stood at the time the writ of error was sued out and return made, to show affirmatively that the accused was personally present at all the several stages of

Hoffman vs. The State.

the trial and conviction, requires that the sentence and judgment of the court below should be reversed, and that the subsequent amendment of the record in these respects was without warrant of law and a nullity. The defects and omissions in the record were all the result of failure and neglect on the part of the clerk to make the entries essential to a legal record of the trial of a criminal case. Ought there to be a failure of justice in any such case, either civil or criminal, beyond the power of the court to avert it by proper amendment? There is no statute of amendments applicable to defects in criminal cases such as existed in this record. By the common law it is well established that a court has no power to review or reverse its own judgment of a previous term, and that as to all matters on which the mind of the court acted, or is presumed to have acted, in the rendition of the judgment, it is precluded from again acting at a subsequent term and changing its opinions or altering its decisions. *Ætna L. Ins. Co. v. McCormick,* 20 Wis. 265. But this rule, it is there held, does not preclude the court from correcting clerical errors or mistakes in matters of form, even after the term. The amendments allowed in this case did not go to any subject or matter upon which the mind of the court acted or can be presumed to have acted, but simply to the correction of clerical errors or omissions. Such corrections may always be made, and are not within the rule above stated ( *Wyman v. Buckstaff,* 24 Wis. 477); and the court has power, after the term, to correct a mistake in the entry of its judgment, so as to make the record conform to the judgment actually pronounced (*Durning v. Burkhardt,* 34 Wis. 585; *Will of Cole,* 52 Wis. 591; *Williams v. Hayes,* 68 Wis. 248). Errors occurring by mere mistake or inadvertence may in like manner be made to conform to the fact (*State ex rel. Taylor v. Delafield,* 69 Wis. 264), at a subsequent term, even after an appeal has been taken, though technic-

ally the defendants had the right to avail themselves of the error on appeal at the time it was taken, and to have the appeal determined, so far as the question of costs is concerned, without regard to any subsequent correction of the order appealed from (*Kelly v. C. & N. W. R. Co.* 70 Wis. 335; *German Mut. F. F. Ins. Co. v. Decker*, 74 Wis. 560). But it is believed that no such limitation exists in or would be applicable to a criminal case. 20 Am. & Eng. Ency. of Law, 523, 524, and cases cited.

It is said that no amendment made after the term can be allowed, except by record evidence, or facts appearing in the record itself, by which to make the amendment, and cases are cited to that effect; but other authorities of the highest respectability deny that the court is thus restricted as to evidence. In *Rhoads v. Comm.* 15 Pa. St. 272, it was held that the court had power to supply record evidence *nunc pro tunc* of the forfeiture of a recognizance which, by misprision of the clerk, had not been recorded, GIBSON, C. J., saying: "The old notion that the record remains in the breast of the court only to the end of the term has yielded to necessity, convenience, and common sense. Countless instances of amendment after the term, but ostensibly made during it, are to be found in our own books and those of our neighbors." It savors too much of strict adherence to old notions to hold that the court may not receive any evidence to supply a defect or correct an error in the record that would be received on the trial of an issue to determine any important fact affecting the life, liberty, or property of the citizen. The amount and kind of evidence to satisfy the court as to what the entry should be rests with the court. The cause is heard here upon the record, and this includes, of necessity, the entire record as amended *nunc pro tunc;* and there is no reason or force in the objection that the amendment was made after writ of error brought, so long as the party was present and heard on the

motion, and any abuse in the exercise of the power may be corrected at the hearing on the writ of error (Freem. Judgm. § 72; *Fay v. Wenzell*, 8 Cush. 317; *Balch v. Shaw*, 7 Cush. 284); and this rule applies as well to criminal as civil cases. "The court may order *nunc pro tunc* entries, as they are called, made to supply some omission in the entry of what was done at the preceding term; yet this is a power the extent of which is limited and not easily defined. In general, mere clerical errors may be amended in this way." 1 Bish. Crim. Proc. (2d ed.), sec. 1160; *State v. Clark*, 18 Mo. 432; *West v. State*, 22 N. J. Law, 212; *Bilansky v. State*, 3 Minn. 427. In the case last cited, the plaintiff in error had been convicted of the crime of murder; and, after the case had been carried to the supreme court, the record of the proceedings on the trial was amended so as to show affirmatively that each juror was sworn, and that they were put in charge of the officer to keep them as prescribed by law, and that they were polled on coming in with their verdict, at the request of the defendant,— matters which had been omitted from the record,— and the right to make such amendments to supply defects in or omissions from the record was sustained. In the recent case of *In re Wight*, 134 U. S. 136, 143, the doctrine of this case was affirmed, and the power of the court to make such amendments in a criminal case after the term was discussed and sustained.

It is a matter of regret that many of the records in criminal as well as civil cases coming to this court are defective in important particulars, and made up in an irregular, imperfect, or confusing manner. The circuit judges ought to exercise such supervision over the method of making up, keeping, and certifying records as will protect the rights of the public and parties litigant; and to this end they may, if necessary, remove negligent or incompetent clerks. The amendments to the record made by the circuit court in this

case, and returned to this court, were rightfully and properly made, and the objections relied on cannot prevail.

2. A careful examination of the evidence satisfies us that the plaintiff in error was improperly convicted of murder in the third degree; that there was no evidence to warrant the instructions given to the jury on that subject, leaving them to find him guilty of that offense. Murder in the third degree consists in " the killing of a human being, without any design to effect death, by a person *engaged in the commission* of any felony." R. S. sec. 4345. Any offense for which the offender, on conviction, shall be liable by law to be punished by imprisonment in the state prison, is a felony, within the meaning of this statute. Sec. 4637. There is no claim that the plaintiff in error, on the occasion in question, was guilty of any felony, within the meaning of sec. 4637, unless it was under sec. 4377, which declares that " any person who shall assault another with intent to do great bodily harm, shall be punished by imprisonment in the state prison not more than three years nor less than one year, or in the county jail not more than one year, or by fine," etc.; and for assaulting ˙Robert Risto, " with intent to do great bodily harm." The question, in brief, is, Was *August Hoffman*, the plaintiff in error, at the time of the killing of Herzog, engaged in the commission of an assault on Robert Risto with the intent to do great bodily harm? If the assault on Robert Risto was at an end before the killing of Herzog occurred, so that the latter act had no legal connection with or relation to the assault on Robert Risto, and it can be said that the killing of Herzog did not occur during such assault, the plaintiff in error ought not to have been convicted of murder in the third degree. The evidence is clear and beyond question that the assault on Risto had terminated and was at an end before the plaintiff in error struck Herzog. He had wholly desisted from his demonstrations against Risto, and had turned

around to face Herzog, who had taken the chair from him, and it had been put on the floor. He made motions manifesting an intention to fight with or defend himself against Herzog, and, at a time when it does not appear that any one was threatening or assaulting Risto, Herzog sprang forward, struck the plaintiff in error a heavy blow about his eye, and felled him to the floor upon his back. The plaintiff in error got up, and he and Herzog engaged in a struggle, when they fell on the floor, during which the wound was given which caused Herzog's death. It would seem from Risto's evidence that he was not in the room at the time the killing occurred, and no witness makes any clear mention of his presence or of anything that was done to or against him after Herzog took the chair away from the plaintiff in error. It is not sufficient that the plaintiff in error killed Herzog; but, in order to render him guilty of murder in the third degree, at the time the homicide was committed it was requisite that he should have been engaged in an assault on Robert Risto with intent to do great bodily harm. This might occur in various ways, as if, during the assault, Herzog had come between the parties, and received a mortal blow or wound intended for or aimed at Risto, or he had been intentionally stricken down by a mortal blow or wound in an attempt to reach Risto. *State v. Hammond*, 35 Wis. 315, 318; *Terrill v. State*, 74 Wis. 278, 284.

The finding of the jury is, in legal effect, that the plaintiff in error killed Herzog without any design to effect his death. In murder in the third degree the malice and felonious intent necessary to make it such is derived from the felony by the commission, or in the commission, of which the killing happens. *Pliemling v. State*, 46 Wis. 516, 519, in which the subject is fully discussed by the present chief justice. So in *State v. Smith*, 32 Me. 369, the court says: "The malice is implied when the killing is committed by a

person when in the perpetration of a crime punishable in the state prison; . . . and if, *in the perpetration of that offense,* a killing occurs, the malice making the killing murder may be implied." In *Pliemling v. State,* 46 Wis. 516, the conclusion was reached, that, "in order to make a killing 'without a design or intention' murder in the third degree, the felony committed or attempted, from which the implied malice necessary to murder must be derived, must at least have some intimate and close relation with the killing, and must not be separate, distinct, and independent from it." It is not enough that the killing occurred soon or presently after the felony attempted or committed. There must be such a legal relation between the two that it can be said that the killing occurred by reason and as a part of the felony, or, as in this case, that the killing occurred before the assault on Robert Risto was at an end; so that the assault had a legal relation to the killing, and was concurrent with, in part at least, and a part of, it, in an actual and material sense. The assault upon Robert Risto and the killing of Herzog by the plaintiff in error, according to the evidence, bore no such actual or legal relation; and the court erred in submitting to the jury whether he was guilty of murder in the third degree. For this reason the conviction must be reversed.

*By the Court.*— The judgment of the court below is reversed, and the cause is remanded for a new trial. The warden of the state prison at Waupun will deliver the prisoner, *August Hoffman,* to the sheriff of Marathon county, to be held by him in custody until he is discharged therefrom according to law.