STATE of Wisconsin, Plaintiff-Respondent,

v.

James OIMEN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 90–2927–CR. Oral argument January 12, 1994.—Decided
June 7, 1994.*

(Also reported in 516 N.W.2d 399.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Suzanne Hagopian,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

Amicus curiae was filed by *Kate Kruse Livermore,* clinical assistant professor, with whom on the brief was *Walter J. Dickey,* Director, Madison, for Legal Assistance to Institutionalized Persons.

HEFFERNAN, CHIEF JUSTICE. This is a review of an unpublished decision of the court of appeals affirming a judgment of the Dane County Circuit Court, Judge George A. W. Northrup, convicting James Oimen, pursuant to a jury verdict, of felony murder, sec. 940.03, Stats., as a party to a crime and convicting Oimen of attempted armed robbery, secs. 943.32(1)(b) and (2), Stats., and 939.32(1), Stats., also as a party to a crime.[1] We accepted review limited to the following two issues: whether the felony murder statute, sec. 940.03, Stats.,[2] applies to a defendant whose co-felon is killed by the intended felony victim;

---

[1] Oimen was also convicted of armed burglary, sec. 943.10 (2)(a), Stats., as a party to the crime. This portion of the judgment of conviction is not on review in this case.

[2] Section 940.03, Stats. 1991–1992, states:

> Whoever causes the death of another human being while committing or attempting to commit a crime specified in s. 940.225(1) or (2) (a) [first degree sexual assault and second degree sexual assault with use or threat of force or violence], 943.02 [arson], 943.10(2) [armed burglary] or 943.32(2) [armed robbery] may be imprisoned for not more than 20 years in excess of the maximum period of imprisonment provided by law for that crime or attempt.

and whether the circuit court erred in instructing the jury on the elements of felony murder.

We conclude that under sec. 940.03, a defendant can be charged with felony murder for the death of a co-felon when the killing was committed by the victim of the underlying felony. Section 940.03 limits liability to those deaths caused by a defendant committing or attempting to commit a limited number of inherently dangerous felonies, but it contains no other limitations on liability. The state need only prove that the defendant caused the death, and that the defendant caused the death while committing or attempting to commit one of the five listed felonies. The defendant's acts need not be the sole cause of death. Thus, Oimen was appropriately charged with felony murder for the death of a co-felon, Shawn Murphy McGinnis, who was killed by Tom Stoker, the victim of the underlying felony.

Regarding the jury instructions, we conclude as a matter of law that the phrase in sec. 940.03, "while committing or attempting to commit," encompasses the immediate flight from a felony. The uncontroverted evidence indicates that the killing in the present case occurred no later than during a period of immediate flight. Thus, in the present case the court did not err in providing an instruction stating that, if the causal connection exists, the killing may take place at some time after the commission or the attempted commission of the underlying felony. In the future, courts should utilize an instruction stating that "while committing or attempting to commit" encompasses the period of immediate flight. We further conclude that the portion of the party to a crime instruction stating that "a person is concerned with the commission of a crime if he . . . [d]irectly commits the crime" was harmless error. Because the prosecution did not offer any evidence or

make any argument regarding a direct actor theory of liability, there is no chance the jury erroneously convicted Oimen on this basis. We affirm the decision of the court of appeals.

The evidence at trial indicated that in late December of 1988, James Oimen, Shawn Murphy McGinnis and David Hall made plans to rob Tom Stoker, a "bookie" who occasionally had large sums of money at his house. Over the course of several meetings, Oimen, who had placed bets with Stoker on numerous occasions, told Hall and McGinnis that Stoker was a quiet person who was "meek and mild" and did not carry a gun. Oimen stated that Stoker could have up to $200,000 in the house but would not report a theft because the money was gained illegally. Oimen drew a diagram of the layout of Stoker's house and told the other two men where the money was likely to be. Oimen added that Stoker would turn over his money if the two men merely threatened to destroy the computer Stoker used to keep track of point spreads. Oimen also explained that he did not want to go into the house himself because Stoker knew him.

On January 2nd, 1989, McGinnis borrowed a gun described as either a pellet gun or a BB gun. Hall testified that the gun looked real and he was only able to discern that it was a BB gun because it had a small hole at the end. That evening, the three men drove to Stoker's house and parked down the street. Hall and McGinnis went up to the house and Oimen remained in Hall's pickup. McGinnis carried the BB gun. Hall carried a pool cue butt, a small billy club and a pocket knife. Before attempting the break-in, McGinnis cut Stoker's phone lines.

At approximately 11:30 p.m., Stoker was attempting to call his daughter when the phone line went dead.

Suspicious that something had happened, Stoker laid his Winchester 308 automatic hunting rifle out in the bedroom. Stoker then walked through the house to look out the windows. In the kitchen, he turned on the porch light and pulled aside curtains on a window in the kitchen door. He did not open the door. McGinnis and Hall were standing right outside this door, with masks covering their heads. McGinnis, who was pointing the BB gun about four inches from Stoker's head, yelled something such as, "We want your money, you bookie." Stoker testified that the gun looked like a large hand gun.

The next sequence of events occurred in less than forty-five seconds. Stoker ran back to his bedroom, grabbed the rifle and loaded it. Meanwhile, McGinnis broke down the kitchen door and the two men ran into the house. While Stoker was loading his gun he saw McGinnis standing down the hall in the bathroom doorway, pointing a gun straight at Stoker. Stoker could not see Hall but he saw what looked like another gun pointed out from the stairway.

Stoker pointed his gun at McGinnis. After McGinnis said, "He's got a gun," Hall and McGinnis turned and began to run back in the direction from which they had come. Stoker walked down the hall after the men. When Stoker reached the kitchen it appeared to him that McGinnis, who was on the porch, was coming back into the house. Stoker testified that McGinnis pointed his gun at Stoker, who responded by firing his rifle. The shot hit McGinnis, who fell backwards into the snow outside.

Hall heard the rifle shot and then McGinnis screaming that he had been hit. While Hall helped McGinnis toward the road, he heard his pick-up start up. He left McGinnis and went up the street to where

430

Oimen had agreed to wait if there was any trouble. Oimen was not there—Hall could hear the pickup driving away in the distance. Hall went back to where McGinnis lay near the road, but ran away once he heard police sirens. Meanwhile, McGinnis died. On January 5, Hall turned himself into the police. In return for an agreement with the district attorney's office that he would only be charged with one count of armed burglary, Hall described what had happened that night and the preceding days.

Oimen was arrested and charged with attempted armed robbery, felony murder and armed burglary, as a party to the crime on each count. Attempted armed robbery was the underlying felony in the felony murder charge. Oimen moved to dismiss the felony murder charge, arguing that sec. 940.03, Stats., the felony murder statute, did not apply to a co-felon when the victim of the underlying felony killed one of the other felons. The Dane County Circuit Court denied the motion and the case proceeded to trial.

At the end of Oimen's trial, Dane County Circuit Court Judge George Northrup instructed the jury. The jury was instructed on all three theories of party to a crime liability—direct actor, conspirator, and aider and abettor. In relevant part, Judge Northrup gave the following instruction on felony murder:

> Felony murder, as defined in § 940.03 of the Criminal Code of Wisconsin, is committed by one who causes the death of another human being while committing or attempting to commit the crime of armed robbery. Before the defendant may be found guilty of felony murder, the State must prove by evidence which satisfies you beyond a reasonable doubt that the following two elements of this offense were present.

First, that the defendant caused the death of Shawn Murphy McGinnis.

Second, that the defendant caused the death of Shawn Murphy McGinnis while attempting to commit the crime of armed robbery.

The first element requires that the relation of cause and effect exists between the death of Shawn Murphy McGinnis and the act of the defendant. Before the relation of cause and effect can be found to exist, it must appear that the defendant's act was a substantial factor in producing the death.

The second element requires that the defendant caused the death of Shawn Murphy McGinnis while committing the crime of armed robbery.

In determining whether the defendant was in the act of committing an attempted armed robbery, you should be guided by the law and instructions as have already been given to you by this Court.

During deliberations, the jury sent Judge Northrup a sheet containing four questions:

1. What exactly does 940.03 say—a copy of the law.

2. What is "the relation of cause and effect."

3. What is "substantial"? In particular, if Oimen gives information only and is a participant in the crime, is this "a substantial factor" in causing the death?

4. Please give us a dictionary definition of "substantial."

Judge Northrup decided to set forth a portion of the explanatory material contained in the footnotes accompanying the jury instructions on felony murder. Judge Northrup sent the following responses to the jury:

432

MEMBERS OF THE JURY:

1) The exact language of Section 940.03 is contained in the jury instruction. The statute states: Whoever causes the death of another human being while committing or attempting to commit the crime of armed robbery is guilty of felony murder.

2) There may be more than one cause of death. The act of one person alone might produce it, or the acts of two or more persons might jointly produce it. Questions about the connection between the felony and death caused are best resolved by referring to the words of the statute and asking: Did the commission of the felony cause the death. If this causal connection does exist, the killing may take place at some time before or after the commission or the attempt to commit the underlying felony.

These two statements are all I am permitted to respond with. The law prohibits providing dictionary definitions as such.

The jury found Oimen guilty on all counts. The circuit court sentenced Oimen to a total of twenty-four years in prison—fourteen years on the combined charges of attempted armed robbery as party to a crime and felony murder as party to a crime,[3] and ten years consecutive on the charge of armed burglary as party to a crime. In sentencing Oimen, Judge Northrup gave some consideration to the fact that McGinnis was a co-felon and not an entirely "innocent bystander."

---

[3] The charges were combined because the felony murder statute provides a penalty enhancement to the penalty imposed for the underlying felony—the two are not penalized separately. Oimen could have received a total sentence of thirty years on these combined charges—twenty years for the felony murder conviction plus the ten year maximum period provided for the attempted armed robbery.

After his sec. 809.30 post-conviction motion was denied, Oimen appealed his conviction. The court of appeals affirmed the judgment of felony murder, reasoning that because Oimen was convicted as a party to the crime it was immaterial that Oimen was not in the house when McGinnis was shot. The court of appeals concluded that, because the defendant's acts were a substantial factor in producing McGinnis' death, it was immaterial whether the defendant, an accomplice or the victim directly committed the fatal act. Oimen also challenged the supplemental jury instruction, stating that the instruction erroneously allowed the jury to believe that if the felony caused the death, then the jury need not find that Oimen caused the death.[4] The court of appeals did not address this challenge to the instruction, stating that Oimen had not raised it at trial.[5]

The first issue we address on review is whether a defendant may be charged with felony murder under sec. 940.03, Stats., when that defendant's co-felon is killed by the intended victim of the underlying felony. Statutory construction is a question of law that this court determines *de novo*. *State v. Olson,* 175 Wis. 2d 628, 633, 498 N.W.2d 661 (1993). The principal objective of statutory construction is to ascertain and give effect to the legislature's intent. *Id.* In determining that intent, we first resort to the language of the stat-

---

[4] Oimen did not raise this argument before this court.

[5] In his dissenting opinion, Judge Sundby concluded that the legislature did not intend that sec. 940.03 apply when a death occurs which was not in furtherance of the commission of the underlying felony. He added that his conclusion is consistent with the approach taken by a majority of states.

ute. *Marshall-Wisconsin Co. v. Juneau Square Corp.*, 139 Wis. 2d 112, 133, 406 N.W.2d 764 (1987).

Section 940.03, Stats., states:

> Whoever causes the death of another human being while committing or attempting to commit a crime specified in s. 940.225(1) or (2)(a) [first degree sexual assault and second degree sexual assault with use or threat of force or violence], 943.02 [arson], 943.10(2) [armed burglary] or 943.32(2) [armed robbery] may be imprisoned for not more than 20 years in excess of the maximum period of imprisonment provided by law for that crime or attempt.

We conclude that the plain meaning of sec. 940.03, Stats., allows a defendant to be charged with felony murder when a co-felon is killed by the intended felony victim. Section 940.03, contains two elements, which were set forth in the jury instructions: the defendant must cause a death and the defendant must cause the death while committing or attempting to commit one of the five listed felonies. "Causes" has a consistent, well-established meaning in Wisconsin criminal law. An actor causes death if his or her conduct is a "substantial factor" in bringing about that result. *State v. Serebin*, 119 Wis. 2d 837, 846–47, 350 N.W.2d 65 (1984); *Cranmore v. State*, 85 Wis. 2d 722, 775, 271 N.W.2d 402 (Ct. App. 1978).[6] As long as an actor's conduct is a

---

[6] *See also,* Walter Dickey, David Schultz and James L. Fullin, Jr., *The Importance of Clarity in the Law of Homicide: The Wisconsin Revision ["The Importance of Clarity"]*, 1989 Wis. L. Rev. 1323, 1329 (setting forth the "substantial factor" test for causation and stating that definitions of causation generally remain constant from one degree of homicide to another and throughout the criminal code).

"substantial factor" in bringing about a death, the plain language of sec. 940.03 places no limits on whose death it is that results.[7] Under sec. 940.03, it is irrelevant that McGinnis, the person who was killed, was a co-felon. It is also irrelevant for purposes of sec. 940.03 that the rifle shot fired by Stoker was the immediate cause of McGinnis's death. A "substantial factor" need not be the sole cause of death. *See Cranmore,* 85 Wis. 2d at 775 (stating that even if the victim's attending physicians were negligent and this negligence contributed to his death, this would not break the chain of causation between the defendant's acts and the death).

The jury was provided with an instruction setting forth the two elements of felony murder. On review of jury findings of fact, viewing the evidence most favorably to the state and the conviction, we ask only if the evidence is inherently or patently incredible or so lacking in probative value that no jury could have found guilt beyond a reasonable doubt. *State v. Alles,* 106 Wis. 2d 368, 377, 316 N.W.2d 378, 382 (1982). The jury

---

[7] In contrast, the laws of several other states expressly limit felony murder to the killing of one other than a participant in the underlying felony. *See, e.g.,* N.Y. Penal Law § 125.25 (McKinney 1994 pocket part), which states in relevant part:

A person is guilty of murder in the second degree when:

3. . . . . [H]e commits or attempt to commit [listed felonies] and in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person *other than one of the participants.* . . . (Emphasis added).

*See also* statutes cited in 2 Wayne R. LaFave and Austin W. Scott, Jr., *Substantive Criminal Law,* § 7.5(d) at 218 n.64 (1986).

was required to determine that each element of the crime was satisfied beyond a reasonable doubt.

The evidence presented to the jury supports its determination that Oimen's conduct caused, i.e. was a substantial factor in, McGinnis' death. The testimony at trial indicated that Oimen was essentially the ringleader who set into motion the events that lead to McGinnis' death. Oimen was the only one of the three men who knew Stoker. Oimen informed Hall and McGinnis that Stoker was a bookie and was likely to have large sums of money at his house during the college football bowl games. Oimen took the other two men past Stoker's house days before the robbery. He drew a diagram of the layout of Stoker's house and indicated where the money was likely to be. Oimen gave the two men the impression that safety was not a concern, stating that Stoker was "meek and mild" and did not own a gun. He indicated that Stoker would hand his money over if they merely threatened to destroy computer equipment. Oimen drove with the men to Stoker's house on the night of the robbery and planned to drive the getaway vehicle. When he heard the rifle shot Oimen drove off, leaving the other two men to fend for themselves. Although Oimen chose to reduce his personal risk, stating that he did not want to go into Stoker's home because Stoker knew him, Oimen's conduct was nonetheless a substantial factor in McGinnis' death.

The conclusion we reach regarding the elements of felony murder liability, based on the plain language of sec. 940.03, is supported by the legislative history. Section 940.03 became law when the legislature revised the law of homicide. These revisions were drafted by the Wisconsin Judicial Council's Special Committee on

Homicide and Lesser Included Offenses ["Homicide Law Committee"].[8] Dickey et al., *The Importance of Clarity*, 1989 Wis. L. Rev. at 1325–27. In the initial draft of proposed revisions to the homicide statutes the committee strongly recommended abolition of the felony murder statute because all seriously culpable conduct could be prosecuted under other homicide statutes. *Summary of Proceedings of Homicide and Lesser Included Offenses Committee, Wisconsin Judicial Council ["Summary of Proceedings"]*, Jan. 21, 1983, at 10–11, March 18, 1983, at 14, June 17, 1983 at 8.[9] The committee also drafted a revised statute to recommend as a "fall back" if the legislature decided not to abolish felony murder. *Summary of Proceedings*, Jan. 21, 1983 at 10–12, March 18, 1983, at 12. Eventually the Judicial Council voted to retain felony murder in the fall back form it had developed. *Minutes of Judicial Council Meeting ["Minutes"]*, April 19, 1985, at 9. Section 940.03, along with the other revisions to the law of homicide, was enacted in 1988. *The Importance of Clarity*, 1989 Wis. L. Rev. at 1328.

Because the Wisconsin Judicial Council drafted the homicide revision and was instrumental in its passage, summaries of discussions by members of the

---

[8] The Wisconsin Judicial Council is a body of twenty members that has powers and duties set forth in sec. 758.13(2), Stats., including:

> (d) Receive, consider and in its discretion investigate suggestions from any source pertaining to the administration of justice and to make recommendations.

[9] Summaries of proceedings and minutes of meetings of the Judicial Council and the Homicide Law Committee are contained in the three volume set, Wisconsin Judicial Council, *Judicial Council's Revision of Wisconsin Homicide Statutes 1982–1987,* available at the Wisconsin state law library.

Council on the proposed "fall back" provision that eventually became sec. 940.03 are helpful in ascertaining the legislature's intent in passing this statute. *See State v. Barkdoll,* 99 Wis. 2d 163, 176, 298 N.W.2d 539 (1980) (stating that written views of persons intimately involved with drafting legislation are considered authoritative statements of legislative intent). The Homicide Law Committee discussions indicate that the Judicial Council decided to recommend only one limitation on liability—the major limitation of restricting felony murder liability to killings that occur during the course of five listed felonies.

The Homicide Law Committee discussed and rejected other limitations on felony murder liability. The committee decided not to insert "natural and probable consequences" language contained in the existing felony murder statute, sec. 940.02(2), Stats. 1981–1982,[10] into the "fall back" provision, concluding that the list of specified felonies would replace this language. Professor Frank Remington, a member of the committee and professor of criminal law at the University of Wisconsin law school, explained:

> [T]he "natural and probable consequences" rule developed as an alternative to specifying a limited number of underlying felonies in the historic attempt to mitigate the harshness of common law felony murder. Jur[is]dictions which restrict the underlying felony to a few heinous offenses do not

---

[10] Section 940.02(2), provided:

Whoever causes the death of another human being under either of the following circumstances is guilty of a class B felony:

. . .

(2) As a natural and probable consequence of the commission of or attempt to commit a felony.

need the natural and probable consequence doctrine, too. Although there is no Wisconsin case on natural and probable consequence, [11] other jurisdictions have construed the limitation as one on the nature of the underlying felony, rather than the particular circumstances under which the death occurs. Thus, homicide is a foreseeable consequence of armed robbery but not of forgery.

*Summary of Proceedings,* March 18, 1993 at 12.

Professor Remington added that foreseeability should not have to be litigated when specified crimes are listed, further stating, "There is fair warning in the statute that if you cause death while embarked on these crimes you'll get life imprisonment[12] whether or not you intend[ed] to kill." *Id.* at 12–13.

At a later Homicide Law Committee meeting, Professor Remington reiterated that foreseeability should not become an issue under the proposed revision to the felony murder statute. The minutes summarize his discussion:

> [T]he intent of the committee is to include any homicide caused in the commission or an attempt to commit any of those enumerated offenses. There may be disputation about when a felony begins and ends, but there need not be any litigation over

---

[11] This discussion occurred prior to the court of appeals decision in *State v. Noren,* 125 Wis. 2d 204, 371 N.W.2d 381 (Ct. App. 1985), *rev. denied,* 126 Wis. 2d 519, 378 N.W.2d 292 (1985). The court of appeals concluded that the requirement in the former felony murder statute, sec. 940.02(2), that death be a "probable consequence," meant that the act constituting the felony had to be in itself dangerous to life. *Noren,* 125 Wis. 2d at 208.

[12] At that point the committee planned to recommend punishment of life imprisonment under the "fall back" provision.

whether the homicide was foreseeable when the criminal enterprise was undertaken. . . . He hoped it was clear that if the defendant causes the death while committing or attempting to commit a Class B felony [at that time all Class B felonies that were not already homicides were going to be enumerated], no further inquiry into culpability is required
. . ..

*Summary of Proceedings,* April 22, 1982, at 8–9. The summary adds, "The committee agreed that this was its intent."[13] *Id.* at 9.

The Judicial Council and Homicide Law Committee meeting summaries, particularly Professor Remington's remarks, clearly indicate that the legislature chose to limit liability for felony murder only to deaths that occurred as a result of the commission or attempt to commit five inherently dangerous felonies.[14] Because of the violent and dangerous nature of the underlying act, a death is deemed to be a natural and probable consequence of the felony. This is the limitation that the legislature chose to impose, rather

---

[13] This discussion is consistent with additional statements at later meetings. University of Wisconsin law school Professor Walter Dickey, who was also a member of the Homicide Law Committee, stated during a later discussion on the fall back position:

[T]here seems to be general agreement that, if felony murder is not repealed, it should be limited to certain enumerated felonies because the 'natural and probable consequence' limitation in the current statute is not very satisfactory.

*Minutes,* April 19, 1985, at 5.

[14] *See,* Dickey et. al, *The Importance of Clarity,* 1989 Wis. L. Rev. at 1368 (stating that the underlying felonies in the felony murder statute were selected individually for their inherent dangerousness).

than to place limitations on the class of victim or on the person who would be the immediate cause of death.

A brief discussion by members of the Homicide Law Committee indicates that sec. 940.03 was not meant to be restricted to situations in which the person killed was the victim of the underlying felony. A member of the committee raised the possibility of having a longer list of underlying felonies and limiting the statute's coverage to killings of the victim of those crimes. *Summary of Proceedings,* March 18, 1983, at 14. However, another committee member stated the victim limitation could present problems and asked whether patrons at a retail store would be "victims" if killed in an armed robbery when only cash register proceeds had been taken. *Id.* The other committee member agreed that limiting the statute's coverage to death of victims of the underlying felony could prove to be complicated. We could find no further discussion suggesting that sec. 940.03 was to apply only to murders of certain individuals such as bystanders or victims of the underlying felony. No such limiting language was proposed.

Minutes of the Homicide Law Committee also indicate that committee members were aware that felony murder charges had been brought in circumstances in which the defendant was a party to the crime of the underlying felony but had not actually performed the lethal act. Two committee members explained that when a defendant who had not performed the lethal act was charged with first degree murder, the defendant often asked for a felony murder instruction as an alternative because the jury was most amenable to a reduced charge under these circumstances. *Summary of Proceedings,* Jan. 21, 1983, at 10. A similar discussion occurred at an earlier meeting. *Summary of*

*Proceedings,* Nov. 11, 1982, at 25. Clearly the committee was aware that liability had not been limited to the "trigger person" in previous felony murder cases. However, the committee made no effort to change this approach and limit liability to the "trigger person" when it developed the fall back provision that became sec. 940.03.

Oimen points out that the vast majority of state courts that have addressed this issue have concluded that the applicable statute does not make a felon liable for murder when the killing was done by a victim of the felony. These states take what has been termed the "agency approach" to felony murder liability, under which a felon can only be liable for death when the killing was committed by an individual acting in concert with him, i.e. acting in furtherance of the underlying felony.[15] We believe that sec. 940.03 and the accompanying legislative history indicate that the legislature did not intend to impose liability only when there is an "agency" relationship. The Wisconsin legis-

---

[15] Several states have rejected liability based on lack of agency in the context of a killing committed by the victim of the underlying felony. *See People v. Washington,* 402 P.2d 130 (Cal. 1965); *Weick v. State,* 420 A.2d 159 (Del. 1980); *State v. Crane,* 279 S.E.2d 695 (Ga. 1981); *Campbell v. State,* 444 A.2d 1034 (Md. 1982); *Sheriff, Clark County v. Hicks,* 506 P.2d 766 (Nev. 1973); *Jackson v. State,* 589 P.2d 1052 (N.M. 1979); *State v. Bonner,* 411 S.E.2d 598 (N.C. 1992).

Other states have rejected liability based on lack of agency in the context of a killing committed by police officers or another third party trying to apprehend a felon and killing either the felon or another person. *See Alvarez v. District Court In and For City and County of Denver,* 525 P.2d 1131 (Colo. 1974); *Commonwealth v. Balliro,* 209 N.E.2d 308 (Mass. 1965); *Commonwealth ex rel. Smith v. Myers,* 261 A.2d 550 (Pa. 1970) and *Commonwealth v. Redline,* 137 A.2d 472 (Pa. 1958).

lature chose to limit felony murder liability by restricting it to situations involving a limited number of inherently dangerous underlying felonies. The legislature placed no further restriction on felony murder liability. Further, we note that the cases adopting the agency approach appear to be grounded in policy concerns—dissatisfaction with the strict liability aspect of felony murder, or a concern that liability in such cases "erodes the relation between criminal liability and moral culpability." *Washington*, 402 P.2d at 134. While that concern is not unreasonable, that policy determination is one for the legislature to make and the Wisconsin legislature's determination is to the contrary.

Realizing that application of the felony murder statute could lead to harsh results in some cases, the Homicide Law Committee explained that any potential harshness can be mitigated at sentencing. Professor Remington stated that, because the felony murder penalty is computed as a penalty enhancer of up to twenty years in addition to the maximum penalty for the felony, the judge is able to exercise discretion in setting the length of sentence. *Summary of Proceedings,* March 18, 1993 at 13. *See also,* Dickey et al., *The Importance of Clarity,* 1989 Wis. L. Rev. at 1371 (stating that "[s]entencing becomes the forum for weighing the inherent dangerousness of the defendant's conduct, the foreseeability of the death, and the culpable mental state of the particular defendant with respect to the death"). Although sec. 940.03 does not preclude liability for the death of a co-felon, the fact that the deceased was a participant in the underlying felony is a factor

that a circuit court judge can take into account at sentencing.[16]

Oimen also argues that felony murder requires a culpable mental state at least equal to that required for first-degree reckless homicide. For support, Oimen notes that the Judicial Council recommended abolishing felony murder because virtually all felonies punishable as felony murder would also be punishable under a different homicide statute. Oimen's argument fails. Felony murder is a strict liability offense—sec. 940.03 does not require proof of any mental state. *See* Dickey et. al, *The Importance of Clarity,* 1989 Wis. L. Rev. at 1331.

*Amicus curiae,* Legal Assistance to Institutionalized Persons, asserts that felony murder liability involving substantial punishment for a strict liability offense may violate the Cruel and Unusual Punishments Clause of the Eighth Amendment,[17] because the penalty is disproportionate to the crime. This argument also fails. In *Harmelin v. Michigan,* 501 U.S. 957, 111 S. Ct. 2680 (1991), the United States Supreme Court concluded that a sentence of mandatory life in prison without possibility of parole for possession of

---

[16] Judge Northrup took this factor into account in setting Oimen's sentence. In establishing the sentence, he noted that McGinnis was not an innocent bystander. Oimen's sentence on the felony murder conviction, fourteen years, was considerably less than the maximum thirty year sentence he could have received for this offense.

[17] The Eighth Amendment, which applies against the states by virtue of the Fourteenth Amendment, provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

more than 650 grams of cocaine did not violate the Eighth Amendment. Justice Scalia, joined by Chief Justice Rehnquist, asserted that proportionality review is an aspect only of the Court's death penalty jurisprudence and the Eighth Amendment contains no proportionality guarantee. *Id.* at 2686. In his concurrence, Justice Kennedy, joined by Justices O'Connor and Souter, asserted that the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 2705 (Kennedy, J., concurring) (citing *Solem v. Helm,* 463 U.S. 277, 288, 303 (1983)). The concurrence then determined that given the severity of the crime of possession of 650 grams of cocaine, the sentence was constitutional. The concurrence added that it was rational for a state to conclude that the crime "is as serious and violent as the crime of felony murder without specific intent to kill, a crime for which 'no sentence of imprisonment would be disproportionate.' " *Id.* at 2706 (Kennedy, J., concurring) (citing *Solem,* 463 U.S. at 290, n.15). *Harmelin* indicates, then, that the Wisconsin felony murder statute is not unconstitutional.

The second issue we address on review is whether the circuit court erred in instructing the jury on the elements of felony murder. Oimen argues that the court erred in providing the following supplemental jury instruction, in response to a jury request for more explanation of the meaning of "substantial factor":

> There may be more than one cause of death. The act of one person alone might produce it, or the acts of two or more persons might jointly produce it. Questions about the connection between the felony and death caused are best resolved by referring to the words of the statute and asking: Did the commission of the felony cause the death. *If this causal*

*connection does exist, the killing may take place at some time before or after the commission or the attempt to commit the underlying felony.* (Emphasis added.)

Oimen claims that this instruction is in error because it allowed the jury to convict even if the felony was abandoned at the time the killing occurred. Oimen points out that section 940.03 explicitly states, "Whoever causes the death of another human being *while committing or attempting to commit*" the specified crimes. There was a genuine issue of fact in the present case as to whether the killing occurred during the commission of the attempted felony. Hall states that when he and McGinnis realized that Stoker was armed, the two men began to run in the direction from which they had come. When McGinnis was shot, he was outside the kitchen door and on the porch. Stoker testified that, even though McGinnis was on the porch, McGinnis had turned and pointed his gun at Stoker.

We conclude as a matter of law that the phrase in sec. 940.03, "while committing or attempting to commit", encompasses the immediate flight from a felony. Even if the jury did not believe that McGinnis had turned and pointed his gun at Stoker, the uncontroverted evidence indicates that the killing occurred no later than during the first moments of flight. Only seconds before Stoker shot McGinnis, McGinnis had been standing down the hall from Stoker pointing a gun at him. When Hall and McGinnis saw that Stoker had a rifle, they turned and ran back down the hall. Stoker followed and shot McGinnis moments later, while McGinnis was still at the scene of the felony. Oimen did not drive away until after the gun was fired. Because the killing occurred no later than during the

447

period of immediate flight, the jury instruction was not in error.[18]

*Hoffman v. State,* 88 Wis. 166, 59 N.W. 588 (1894), to which Oimen refers, is distinguishable. Applying the felony murder statute existing at the time, the *Hoffman* court stated;

> It is not enough that the killing occurred soon or presently after the felony attempted or committed. There must be such a legal relation between the two that it can be said that the killing occurred by reason and as a part of the felony, or, as in this case, that the killing occurred before the assault [which was on a different person and was the underlying felony] was at an end . . .

88 Wis. at 179.

*Hoffman* did not involve an immediate flight from a crime scene. Rather, the court determined that the defendant's fight with one man was at an end before the defendant killed the victim. Thus, the felony of assaulting the first man was at an end and could not be the basis for a felony murder charge for the death of the victim. In the present case, the felony was still in progress or the defendants were in a period of immediate flight encompassed within the sec. 940.03 "while committing or attempting to commit" requirement.

---

[18] Our conclusion is consistent with that of the majority of states, which have determined that a killing during the immediate period of escape or flight can constitute felony murder. *See People v. Salas,* 500 P.2d 7, 15 (Cal. 1972), *cert. denied,* 410 U.S. 939 (1973); *State v. Hearron,* 619 P.2d 1157, 1159–60 (Kan. 1980); *State v. Squire,* 234 S.E.2d 563, 573–74 (N.C. 1977), *cert. denied, Brown v. North Carolina,* 434 U.S. 998 (1977); *Commonwealth v. Kichline,* 361 A.2d 282, 286 (Pa. 1976).

Oimen next argues that the circuit court erred in instructing the jury on party to a crime liability under sec. 939.05(2)(a)–(c), Stats. He claims that the portion of the instruction stating, "a person is concerned with the commission of a crime if he . . . [d]irectly commits the crime," should not have been given because it was not supported by the evidence. We conclude that the instruction was harmless error. Because the prosecution did not offer any evidence or make any argument regarding a direct actor theory of liability, there is no chance the jury erroneously convicted Oimen on this basis.

Finally, although Oimen has not raised this particular argument about the jury instructions and has therefore waived it, we wish to point out that he should not have been charged as a party to the crime of felony murder. Oimen was appropriately charged as a party to the underlying offense, attempted armed robbery. Charging felony murder as a party to the crime is redundant and unnecessary. A person convicted of a felony as a party to the crime becomes a principal to a murder occurring as a result of that felony. Although no prejudice has been demonstrated by reason of the instruction in the present case, any potential for confusion on the part of juries hearing felony murder cases will be avoided by charging only the underlying felony as party to a crime, if appropriate.

*By the Court.*—Decision affirmed.